**PACIFIC POWER & LIGHT CO. v. FEDERAL POWER COMMISSION.**

No. 10432.

United States Court of Appeals District of Columbia Circuit.

Argued April 21, 1950.

Decided July 31, 1950.

Mr. Harry A. Poth, Jr., Washington, D. C., for petitioner.

Mr. Willard W. Gatchell, Assistant General Counsel, Federal Power Commission, Washington, D. C., with whom Mr. Bradford Ross, General Counsel, Federal Power Commission, Washington, D. C., was on the brief, for respondent.

Before CLARK, PRETTYMAN and WASHINGTON, Circuit Judges.

PRETTYMAN, Circuit Judge.

Petitioner is an electric public utility. Among other facilities it owns and operates a transmission line between two of its plants in Oregon. One of the plants is a water power project licensed by the Federal Power Commission. The precise length of the transmission line is not stated, but upon the map which is an exhibit it appears to be some 50 or 60 miles. For 9.8 miles the line crosses lands of the United States.[1] The Company applied to the Commission for an amendment to its plant license so as to include the construction, etc., of the line across the Government land. The Commission declined to issue the amendment, on the ground that it had no jurisdiction to do so. The Company petitioned for review of that ruling.

By stipulation the attorneys for the parties have agreed upon a statement of the question presented to us for decision. As thus stipulated the question is: By virtue of the Federal Power Act, does the Federal Power Commission have exclusive jurisdiction to authorize construction, maintenance, and operation of an electric transmission line, conveying energy from hydro-electric sources, which crosses lands of the United States (which are not allotted Indian lands or lands in national monuments and national parks), regardless of the basic nature, purpose and function to be served by such lines?

The pertinent statutory provisions are:

"Sec. 4. The commission is hereby authorized and empowered—

\* \* \* \* \* \*

"(e) To issue licenses to citizens of the United States, or to any association of such citizens, or to any corporation organized under the laws of the United States or any State thereof, or to any State or municipality for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States, or upon any part of the public lands and reservations of the United States (including the Territories), or for the purpose of utilizing the surplus water or water power from any Government dam, except as herein provided: \* \* \*."[2]

"Sec. 3. The words defined in this section shall have the following meanings for purposes of this act, to wit:

\* \* \* \* \* \*

"(12) 'project works' means the physical structures of a project;".[3]

1. None of these lands are allotted Indian lands or located in national monuments or national parks. Act of March 3, 1921, 41 Stat. 1353.

2. Sec. 4(e) of the Federal Water Power Act, 41 Stat. 1065 (1920), as amended by Sec. 202 of the Federal Power Act,

49 Stat. 839 (1935), 16 U.S.C.A. § 797 (e).

3. Sec. 3(12) of the Federal Water Power Act, 41 Stat. 1063 (1920), as amended by Sec. 201 of the Federal Power Act, 49 Stat. 839 (1935), 16 U.S.C.A. § 796 (12).

274

"(11) 'project' means complete unit of improvement or development, consisting of a power house, all water conduits, all dams and appurtenant works and structures (including navigation structures) which are a part of said unit, and all storage, diverting, or forebay reservoirs directly connected therewith, the primary line or lines transmitting power therefrom to the point of junction with the distribution system or with the interconnected primary transmission system, all miscellaneous structures used and useful in connection with said unit or any part thereof, and all water-rights, rights-of-way, ditches, dams, reservoirs, lands, or interest in lands the use and occupancy of which are necessary or appropriate in the maintenance and operation of such unit;".[4]

Under the stipulated question we are to ignore the basic nature, purpose and function to be served by the transmission line involved. In effect we may assume that the line is not part of a "project" and is not a "primary line", the Company by its stipulation having foregone any contest of the findings of the Commission upon those two features of the case.

█ The determinative provision of the statute, deleting unnecessary words, is: "The Commission is authorized to issue licenses to any corporation organized under the laws of the United States for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development, transmission, and utilization of power upon any part of the public lands of the United States." The critical words are "other project works".

Originally the authority to issue licenses for public utility facilities on lands of the United States was vested in the Secretaries of War, Interior, and Agriculture.[5]

The Federal Water Power Act[6] was first passed in June, 1920. "It was the outgrowth of a widely supported effort of the conservationists to secure enactment of a complete scheme of national regulation which would promote the comprehensive development of the water resources of the Nation, in so far as it was within the reach of the federal power to do so, * * *."[7] A Federal Power Commission was created by that statute. The statute was reenacted as Title II of the Public Utility Act of 1935,[8] and the quotations above given are from that reenactment.

The language used by Congress seems perfectly clear. "Or other project works" means that the things theretofore listed in the sentence are project works. "Reservoirs, power houses, transmission lines, or other project works" includes reservoirs which are project works, power houses which are project works, and transmission lines which are project works. The expression does not include reservoirs, power houses, or transmission lines which are not project works.

The words being clear, we need not attempt to ascertain the congressional purpose in enacting the statute. But we may observe that the purpose of Congress appears to have been to place in one agency authority over the development of the hydro-electric resources owned or controlled by the National Government, and would encompass the auxiliary facilities which are parts of those projects. But such a purpose would not necessarily encompass transmission lines or other facilities which are not parts of such projects. There would seem to be no necessity, for example, under the compulsion of that purpose, to take from the Secretary of the Interior authority to determine the use of public lands within his jurisdiction for a transmission line which is not part of a

4. Sec. 3(11) of the Federal Water Power Act, 41 Stat. 1063 (1920), as amended by Sec. 201 of the Federal Power Act, 49 Stat. 838 (1935), 16 U.S.C.A. § 796 (11).

5. 30 Stat. 1151 (1899), 36 Stat. 593 (1910), 31 Stat. 790 (1901), 36 Stat. 1253 (1911), 33 Stat. 628 (1905).

6. 41 Stat. 1063.

7. First Iowa Hydro Elec. Co-op. v. Federal Power Commission, 1946, 328 U.S. 152, 180, 66 S.Ct. 906, 919, 90 L.Ed. 1143.

8. 49 Stat. 838, 16 U.S.C.A. § 791a et seq.

hydro-electric project. Reservoirs, power houses, and transmission lines merely as such were not the considerations which led Congress to pass the Act. The concern of Congress was in the development of water resources.

■ We must be careful to repeat at this point, in view of the foregoing paragraph, that we are not presented with the question whether this transmission line was or was not a part of a project. The stipulated question is whether the Commission has authority over the line regardless of its nature, purpose or function. Our answer is that, unless the nature, purpose and function of the line is such as that it is a part of a power project, it does not fall within the statutory definitions which establish the authority of the Commission, and is not to be forcibly enveloped in the statutory language by the compulsion of a congressional purpose inadequately expressed.

The Company presents a powerful argument in the fact that from about 1920 to about 1941 the Commission did as a matter of fact issue licenses for transmission lines which did not fall within the statutory definition of its authority. In an opinion rendered in 1927 its Chief Counsel frankly stated: "I have construed that section to conform to our practice as I understand it so that the authority of the Commission would extend to licensing lines for the transmission or distribution of power although such lines are not within the definition of a project. In so construing it I have had to treat the purposes as controlling the inference from the use of the word 'other' in the phrase 'other project works' following the authority to license transmission lines so that the Commission would have authority to license transmission lines that are not within the definition of 'project works' which is defined as meaning 'the physical structures of a project.'"

■ We cannot find a purpose as broad as the then Chief Counsel apparently found, and so we think that the administrative practice upon that premise cannot be given effect as altering the statute itself. It is also argued that by reenacting in 1935 the provisions of the Act of 1920 Congress adopted the administrative interpreta-

tion. But there is nothing to show that the attention of Congress was drawn to the administrative practice. At best the reenactment of statutes is a nebulous foundation for statutory construction, and before a mere reenactment can be given conclusive effect as a congressional adoption of an administrative interpretation, it must be shown that Congress was conscious that it was doing so.

The problem presented by this case is typical as one which should be presented to the Congress instead of to the courts. If it is desirable that the Commission, rather than the Secretaries of War, Interior, and Agriculture, have authority to license transmission lines which cross public lands, even though not as parts of hydroelectric power projects, Congress should be asked to make provision to that effect. The problem is inherently legislative. We have said before, and we say again, that the houses of Congress and their committees are as readily available for these purposes as are the courts.

The order of the Commission issued May 27, 1949, dismissing the application of the petitioner for an amendment of its license, will be and is hereby affirmed.