[No. 32970. Department One. October 7, 1954.]

THE STATE OF WASHINGTON, *on the Relation of Mike Pirak, Petitioner and Relator*, v. ROBERT SCHOETTLER, *as Director of Fisheries, Respondent*, WASHINGTON REEF NET OWNERS ASSOCIATION *et al., Interveners.*[1]

[1] Reported in 274 P. (2d) 852.

*Gagliardi, Ursich & Gagliardi*, for relator.

*The Attorney General, Glenn E. Thomson* and *Richard F. Broz, Assistants*, for respondent.

*David E. Rhea*, for interveners.

*Bogle, Bogle & Gates* and *Donald E. Leland, amici curiae.*

HAMLEY, J.—This proceeding was instituted to prohibit the state director of fisheries from issuing licenses for the use of reef nets in the catching of salmon. An alternative writ of prohibition was granted *ex parte* on March 31, 1954. The Washington Reef Net Owners Association and the Puget Sound Reef Netters Union, Local 44, both voluntary associations, were permitted to intervene. A demurrer was interposed and sustained on April 26, 1954, at which time the alternative writ of prohibition was quashed and the action dismissed. The judgment of dismissal is before us for review on a writ of certiorari issued by the chief justice, pursuant to Rule on Appeal 57, 34A Wn. (2d) 61, as amended, effective March 1, 1954.

Relator's petition alleges that he, in partnership with others, owns a fishing vessel and is engaged in commercial salmon fishing in the waters of this state. His fishing equipment is suitable only for that purpose, and is worth in excess of twenty-five thousand dollars. He next alleges that for the past several years the director of fisheries has issued licenses for what is commonly known as a reef net. This is described as a boxlike device which is enclosed on three sides and the bottom, and open on one side for the entry of salmon. It is made stationary in the water by the use of anchors and other means, and remains in one location for the entire fishing season.

It is further alleged that salmon follow well-defined water routes to their spawning grounds, and that the reef nets are placed along these routes. A license for a reef net is issued for a specific location, whereas all other licenses are issued for free-floating gear, and petitioner is denied the right to fish at or near the locations occupied by a reef net. It is alleged that the licensing of reef nets denies petitioner the

right to fish in free and fair competition with others, and that the nets are a menace to navigation.

Relator alleges also that five years ago there were only forty licenses issued for reef nets, but the number has steadily increased, and in 1953 one hundred forty licenses were issued. Finally, the petition alleges that the director of fisheries has indicated an intention to renew old licenses and issue new licenses for reef nets for the year 1954.

Several reasons are set forth in the petition why the issuance of licenses to use reef nets in the manner indicated is unlawful. The only reason urged here, however, is that the use of such devices is prohibited by RCW 75.12.060, Laws of 1951, chapter 271, § 3, p. 896. This statute and RCW 75.28.220, Laws of 1951, chapter 271, § 20, p. 902, which must also be considered, read as follows:

"It shall be unlawful to construct, install, use, operate, or maintain within any waters of the state any pound net, round haul net, lampara net, fish trap, fish wheel, scow fish wheel, set net, weir, or any fixed applicance for the purpose of catching salmon, and it shall be unlawful to take salmon by any such means." RCW 75.12.060

"A license is required for each and every reef net used in the taking or catching of food fish in the waters of the state, for which license there shall be paid a fee of twenty-two dollars and fifty cents per annum by residents and one hundred twelve dollars and fifty cents per annum by non-residents." RCW 75.28.220

Throughout his petition, relator refers to and describes a reef net as a "fish trap" or a "fixed applicance." He argues that, since he has described the reef net thus in the petition, and since the case is being considered on demurrer, it must be taken as admitted that reef nets are fish traps or fixed appliances as contemplated by the statute. He then argues that, consistent with established rules of statutory construction which compel the harmonization of legislative acts, it must be held that the words "for the purpose of catching salmon," as used in RCW 75.12.060, qualify the provisions of RCW 75.28.220. The result, according to appellant, is that the authorization given by RCW 75.28.220 to issue reef net

licenses for the catching of "food fish" is limited to licenses to catch food fish "other than salmon."

We are not in accord with appellant's view that the allegations of the petition to the effect that reef nets are fish traps or fixed appliances must be taken as admitted. The question before us is not whether, as a matter of fact, reef nets are fish traps or fixed appliances. Rather, the question presented is whether, in using the terms "fish trap" and "fixed appliances," the legislature intended to include reef nets. This is the fundamental legal issue in the case, and calls for a conclusion of law. A demurrer does not admit recitals of conclusions either of fact or law. *Hamp v. Universal Auto Company*, 173 Wash. 585, 24 P. (2d) 77. Only facts stated in the petition which are well pleaded are to be considered, and conclusions of the pleader are to be disregarded. *In re Johnson's Estate*, 187 Wash. 552, 60 P. (2d) 271, 106 A. L. R. 217.

Relator contends further than if it be decided that his allegations are conclusions, and not admitted for the demurrer, his description of the reef net as a device "made stationary in the water by anchors or other means" shows it to be a fixed appliance. In this connection, relator appears to argue that the term "reef net" has a special meaning in the pleadings other than that accepted by fishermen generally and by the legislature.

There is no suggestion in the allegations, however, that anything other than well-recognized equipment is being licensed. On the contrary, in eight different instances the petition refers to the apparatus in question as a device "known" or "commonly known" as a reef net. In view of these allegations, it may not now be contended that the term has any meaning other than that contemplated by RCW 75-.28.220. Nor may it now be contended that reef nets of unorthodox design are being licensed without the knowledge of the legislature.

Analysis of the two quoted statutes indicates to us that the terms "fish trap" and "fixed appliance" were not intended to include reef nets. In those cases where the legis-

lature intended to prohibit the use of licensed devices for the catching of salmon, it specifically named such devices in the prohibiting statute.

Thus, RCW 75.28.150 authorizes licenses for set nets in the taking or catching of food fish, but RCW 75.12.060 prohibits the use of such devices in the catching of salmon. The same is true of lampara or round haul nets (RCW 75.28-.180) and brush weirs (RCW 75.28.240). But, whereas licenses are to be issued for reef nets to be used in the taking or catching of food fish (RCW 75.28.220), there is no prohibition in RCW 75.12.060, or elsewhere in the act, against using such devices to catch salmon.

The term "food fish," except where qualified in the act, obviously includes salmon. The legislature understood this and provided such a qualification in the case of several devices for which licenses are authorized. Such a qualification was not provided in the case of reef nets, which were also authorized to be licensed. We must conclude that no such qualification was intended.

RCW 75.12.060 and 75.28.220 were enacted by the legislature in 1949 as sections of the "Fisheries Code." Laws of 1949, chapter 112. The legislature then had the subject of reef nets specifically in mind, since it provided for licensing them. Yet the legislature did not add reef nets to the list of devices prohibited under RCW 75.12.060. In 1951, the legislature rewrote what had been § 31, of chapter 112, Laws of 1949, p. 267, to add to the list of specifically banned devices "lampara nets" and "round haul nets." But the legislature again refrained from adding reef nets to that list. Laws of 1951, chapter 271, § 3.

■ When a statute is ambiguous, the construction placed upon it by the officer or department charged with its administration, while not binding on the courts, is entitled to considerable weight in determining the intention of the legislature. *Smith v. Northern Pac. R. Co.*, 7 Wn. (2d) 652, 110 P. (2d) 851.

The persuasive force of such an interpretation is strengthened when the legislature, by its failure to amend a statute,

"silently acquiesces" in the administrative interpretation. *Smith v. Northern Pac. R. Co., supra; State ex rel. Ball v. Rathbun,* 144 Wash. 56, 256 Pac. 330. This is particularly true when, as here, the section is subsequently (1) considered by the legislature, (2) amended in some other particular, and (3) the administrative construction of the section is not repudiated. See *Paulsell v. Peters,* 9 Wn. (2d) 599, 115 P. (2d) 708.

In our opinion, the statutes of this state do not prohibit the use of reef nets for the catching of salmon. The director of fisheries, acting pursuant to RCW 75.28.220, is therefore authorized to issue licenses for reef nets intended for such use.

The judgment is affirmed.

HILL, DONWORTH, and FINLEY, JJ., concur.

GRADY, C. J. (dissenting)—I do not think this case can properly be decided upon a general demurrer when the basic objection to the petition is that some of the allegations may be construed as conclusions rather than ultimate facts. Anyone who has ever drawn a pleading calling into question the constitutionality of a statute or the proper construction to be given it has realized the difficulty in expressing himself so as not to be met with the claim that he has pleaded conclusions rather than facts. When a pleading is so challenged, the pleader should be given the opportunity to correct by amendment.

The petition in this case seeks to protect the rights the petitioner claims to have to profitably engage in commercial salmon fishing against destructive encroachment by respondent by use of a device commonly called a "reef net." It is alleged in the petition that the device is in fact a fixed appliance and the use of it for taking and catching salmon is made unlawful by RCW 75.12.060. Inasmuch as licenses. may be issued for reef nets to be used for the taking of and catching food fish and that salmon is in such category, it is necessary that petitioner plead and establish as a fact that the appliance of which complaint is made, though commonly termed a reef net, is not such at all, but is such a fixed ap-

pliance as is banned by RCW 75.12.060. The petition, when tested by usual rules relating to a general demurrer, is sufficient. The petitioner is entitled to submit evidence showing the construction and fish-catching qualities of the appliance, so that the court may find as a fact whether it creates the same or a similar evil with reference to salmon as do the devices or appliances enumerated in the prohibitory statute (RCW 75.12.060).

It may be, as was suggested at the hearing before the chief justice on the application for a writ of certiorari, that petitioner will be unable to establish the facts necessary to bring him within the protection of RCW 75.12.060, but his petition, when properly construed, alleges sufficient facts to justify the admission of evidence directed to that end.

The demurrer to the petition should have been overruled.

November 18, 1954. Petition for rehearing denied.