[No. 40187.    En Banc.    January 22, 1970.]

Ray A. Pringle et al., *Appellants,* v. The State of
Washington, *Respondent.*[*]

*Minnick, Hahner & Hubbard* and *H. H. Hahner,* for appellants.

*The Attorney General, J. Richard Duggan* and *Timothy R. Malone, Assistants,* for respondent.

[*]Reported in 464 P.2d 425.

NEILL, J.—Plaintiffs appeal from an adverse judgment in their action for a refund of retail sales taxes assessed on the proceeds from their furnace cleaning business.

Plaintiffs are engaged in the business of cleaning furnaces and chimneys in all types of buildings. In addition to using the usual brooms, steel brushes and scrapers, they employ a power vacuum cleaner mounted on a truck. The cleaning for customers is at infrequent intervals and is usually in addition to the routine care of the heating equipment by the customer himself.

A tax commission audit of plaintiffs' records resulted in a deficiency assessment for retail sales tax on plaintiffs' charges for cleaning furnaces and chimneys. Plaintiffs paid the assessment under protest, claiming that their business was a "janitorial service" within the exemption of RCW 82.04.050. The tax commission denied plaintiffs' petition for a refund and this action was filed.

Every retail sale transacted in this state is subject to a sales tax. RCW 82.08.020. Prior to April 1, 1959, a "sale at retail," as defined in RCW 82.04.050, clearly excluded the cleaning of furnaces. Effective April 1, 1959, the definition of the term "sale at retail" was amended to read:

> The term "sale at retail" or "retail sale" shall include the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following: . . . (c) the sale of or charge made for labor and services rendered in respect to the cleaning, fumigating, razing or moving of existing buildings or structures, but shall not include the charge made for janitorial services; . . .

RCW 82.04.050.

The tax commission implemented the statutory change by amending its rule 170 to read:

> The Retail Sales Tax does not apply to charges made for janitorial services nor for the mere leveling of land used in commercial farming or agriculture. The tax does apply however, in respect to contracts for cleaning furnaces, chimneys or the exterior walls of buildings, as well as to earth moving, land clearing and the razing or moving of structures, whether or not such services are

performed as incidents of a contract to construct, repair, decorate, or improve buildings or structures.

Further, the tax commission issued Excise Tax Bulletin 3.08.172 which in substance excluded furnace and chimney cleaning from the definition of "janitorial services."[1]

■ It is our opinion that the furnace cleaning activity of the plaintiffs is a janitorial service.

■ The words of a statute must be given their usual and ordinary meaning. *State v. Roadhs*, 71 Wn.2d 705, 430 P.2d 586 (1967). Webster's Third New International Dictionary (1968) defines a "janitor" as one who "keeps the premises of an apartment, office, or other building clean and free of refuse, *tends the heating system*, and makes minor repairs." (Italics ours.) The few cases which have been concerned with janitors and their duties are generally in accord with this description. *E.g., see Teall v. Harlow*, 275 Mass. 448, 176 N.E. 533 (1931).

Considerable evidence was adduced at trial showing that the cleaning of furnaces is a normal janitorial function. Indeed, the trial court stated in its memorandum opinion that it was "satisfied the clients of the plaintiff, through their janitors or custodians or what other name designated, normally clean furnaces."

But the trial court concluded that an ordinary janitor cleaning out a furnace would not do as thorough, efficient, and complete a job as the plaintiffs, who, using specialized equipment, only clean a particular furnace about once a year. Since an ordinary janitor, using less sophisticated

---

[1] The existence and language of the bulletin was stipulated and reads:

"The term 'janitorial services' will include, generally, the types of cleaning services ordinarily performed by an employee janitor in the course of his regular duties, whether such types of cleaning services are performed individually under separate contract or are included within a general contract to perform a combination of such services. The term will include contracts to perform window washing, floor cleaning and waxing and the cleaning of interior walls and woodwork, but will not include such activities as cleaning the exterior walls of buildings, the cleaning of furnaces or septic tanks, or special clean-up jobs required by construction, fires, floods, etc."

tools, would not do as good a job as plaintiffs, the trial court felt the plaintiffs were not performing ordinary janitorial services.

The trial court has confused the means with the object. How a janitor cleans a furnace does not determine taxability. The method or equipment used makes no difference, as long as the object is the same. For example, it is painting whether done by a brush, roller, or spraygun. If one waxes a floor, it is the same whether he waxes by hand, rag, mop, or machine. Technological advances in a particular pursuit do not necessarily change the essential nature and object of that calling. Cleaning furnaces is a janitorial function as indicated by the trial court. The method used does not change the nature of that function. To clean is to clean, whether by hand or machine. Thoroughness is not a valid criterion of taxability.

The services performed by the plaintiffs are similar to those rendered by industrial cleaners who assist the housewife in "spring cleaning." The industrial cleaners merely perform the normal tasks of a housewife more thoroughly and efficiently by utilizing better equipment. Yet, these services are not subject to the retail sales tax. In both cases, the services are rendered as a matter of convenience and are capable of being performed by the customer himself.

The evidence establishes that one of plaintiffs' former customers, the Kennewick school system, purchased a power vacuum cleaner from plaintiffs for use in cleaning its own boiler systems. The vacuum is operated by the janitors of the school system. It is not said that the janitors of the school system, when using the special power vacuum to clean the boilers, are not performing janitorial services. This may be an exceptional instance, but it indicates that whatever tools the janitor, maintenance engineer, or building superintendent employs in cleaning out a furnace, it remains a janitorial service.

The tax commission contends that a review of the legislative history of RCW 82.04.050 conclusively shows that the legislature intended commercial furnace cleaning

to be subject to a retail sales tax. This argument is predicated on the legislature's silence with respect to the tax commission's interpretation of the statute, embodied in rule 170. Since rule 170 has been on the books for over 9½ years, during which time the legislature has amended this statute five times without repudiating the administrative interpretation, the defendant urges that the legislature has "silently acquiesced" in its interpretation. *State ex rel. Pirak v. Schoettler,* 45 Wn.2d 367, 274 P.2d 852 (1954), is cited to support this argument. However, this rule of statutory construction is only applicable when the statute in question is ambiguous. Further, the rule is to be applied only in those instances where it is apparent that the subsequent legislative consideration involves the same or similar issue as that which is covered by the administrative rule.

Even assuming the ambiguity requisite to application of the rule of *State ex rel. Pirak v. Schoettler, supra,* the result sought by the tax commission does not follow. It is just as reasonable to assume ambiguity in the words "cleaning of existing buildings or structures" as it is to assume ambiguity in the words "janitorial services."

■ Although interpretive rules and regulations promulgated by the tax commission are entitled to great weight in resolving doubtful meanings of taxing laws, they may not amend or change the enactments of the legislature. *Pierce County v. State,* 66 Wn.2d 728, 404 P.2d 1002 (1965).

■ The repeated reenactment of a statute, without repudiating a prior administrative interpretation thereof, is evidence of legislative acquiescence, but it is not conclusive. Legislative silence in such cases is only a factor to be considered. *See In re Estate of Bordeaux,* 37 Wn.2d 561, 225 P.2d 433 (1950), which involved subsequent reenactments of a statute after a decision of this court interpreting it. It was contended that the legislature had thus acquiesced in the interpretation placed on the statute by the Supreme Court. However, it was held that although the subsequent reenactment of the statute without change was entitled to great weight, it was not controlling.

On numerous occasions the federal courts have been confronted with the contention of congressional acquiescence in administrative interpretations of statutes. In many of these cases the courts have had little difficulty in rejecting the contention. In *Pacific Power & Light Co. v. Federal Power Comm'n,* 184 F.2d 272 (D.C. Cir. 1950), it was said at 275:

> At best the reenactment of statutes is a nebulous foundation for statutory construction, and before a mere reenactment can be given conclusive effect as a congressional adoption of an administrative interpretation, it must be shown that Congress was conscious that it was doing so.

The tax commission in the case at hand has not shown that the legislature was conscious or aware of the administrative interpretation of RCW 82.04.050 when the statute was subsequently reenacted. Post-1959 amendments to this statute do not relate to subsection (c) which is before us. This statute is a complex enactment containing many segments and deals with a variety of activities which are made subject to taxation. We do not believe it is reasonable to assume the legislature considered the impact of an administrative rule on a portion of that statute which it was not considering at the time it was amending other portions of the statute.

Before 1943, the definition of "sale at retail" was generally restricted to sales of tangible personal property. In 1943, the definition was enlarged to encompass charges made for labor and services rendered in the construction, repair, decoration or improvement of buildings, but did not include charges for labor and services involved in the "mere cleaning, fumigating, razing or moving of existing buildings or structures." (Laws of 1943, ch. 156, § 2.) The use of the word "mere," as the plaintiffs and defendant suggest, indicates a distinction between major construction and the normal maintenance of a building. The 1957 amendment (Laws of 1957, ch. 279, § 1) uses practically the same language. Then in 1959, the legislature included in its definition of a "sale at retail" the charges made for "cleaning, fumigating, razing, or moving of existing buildings or

structures." (Laws of 1959, Ex. Ses., ch. 5, § 2.) The word "mere" was omitted. And for the first time, "janitorial services" were specifically exempted.

The omission of the word "mere" in the 1959 amendment is significant and indicates a legislative intent to abolish the earlier distinction between major, unusual and infrequent cleaning of buildings and structures from the incidental, normal and frequent type of cleaning. Thus, for the first time it was called upon to consider the taxing of the activities usually performed by janitors and building maintenance men. It expressed this intent by the express exclusion of "janitorial services."

We are satisfied the legislature did not intend to tax as a "sale at retail" the charges made for the cleaning of furnaces, which is a normal janitorial service.

The case is reversed and remanded for a determination of the amount assessed as a sales tax against plaintiffs' furnace cleaning business, which amount is to be refunded.

HUNTER, C. J., WEAVER, ROSELLINI, and McGOVERN, JJ., concur.

HALE, J. (dissenting)—I find little basis in etymology and none in decisional law, statute or regulation to warrant a holding that one who charges a fee for using his own equipment and machinery to vacuum clean another's furnace is charging for janitorial services. The owner, in my opinion, in having his furnace, flues and chimney vacuum cleaned, is hiring neither a janitor nor custodian nor building superintendent, but simply engaging an independent contractor to perform a specialized job at a contract price. That the vacuum cleaning in part overlaps or replaces some of the janitor's duties is no more of a coincidence than that a plumber in using his particular skills to repair or restore the plumbing may be doing some of the tasks that the janitor could or should have done. The trial court, therefore, in my opinion, correctly held that the Pringles owe the state $9,360.17, and its judgment should be affirmed.

The Pringles are engaged in the business of cleaning furnaces, chimneys and flues, using a truck-mounted, multi-

ple-bag vacuum cleaner, parts of which the elder Pringle invented. For cleaning a home furnace and chimney, their regular charge is $12.50. They do the job and then take their equipment away. They do not stay at or near the furnace to perform the services of a janitor.

In these respects, the Pringles' business resembles that of a catering company who will, for a price, cook a meal in a home or office, serve it and then depart with their equipment. Would the catering company be engaged in performing janitorial services if, as a part of their contract, they cleaned up the premises before and after serving the meal? In such instances, the caterers are no closer to being domestic servants in the household than the Pringles are to being janitors. These distinctions should apply to many other kinds of skilled services which involve cleaning up the area where the work is to be done—*i.e.*, plumbing, electrical repairing, roofing, carpentry and gardening. Thus, I cannot see how the Pringles, in vacuum cleaning one's furnace, flues and chimneys on a fixed fee contract can be said to be *tending the heating system* any more than the caterers who serve a meal in the home for a fixed price are deemed to be family cooks or domestic servants.

The court's opinion by analogy refers to industrial cleaners who assist the housewife in "spring cleaning," and points out that these activities are not taxable as janitorial services; but it should be mentioned, too, that most of the activities encompassed within the term "spring cleaning" are explicitly described as nontaxable in Excise Tax Bulletin 3.08.172, promulgated by the Department of Revenue in which window washing, floor cleaning and waxing, and cleaning of interior walls and woodwork are expressly excluded from taxation. Thus, by administrative construction, the department has placed the spring housecleaning activities within the janitorial services' category but with equal explicitness included furnace vacuum cleaning within the taxable activities under its rule 170. Besides, the people who assist the housewife with "spring cleaning" more often than not are called "husbands," and their services assuredly are not taxable as janitorial services either in accordance

with an obvious exemption or as a species of involuntary servitude.

Every retail sale transacted in this state is taxed. RCW 82.08.020. That is, every transaction defined by statute to constitute a retail sale (RCW 82.04.050) and not exempted by the statute is taxable. Therefore, unless the transaction sought to be taxed falls within the exemption from or exception to the tax, it is taxable. In this instance, the tax is imposed on the Pringles as follows:

> The term "sale at retail" or "retail sale" shall include the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following: . . . (c) the sale of or charge made for labor and services rendered in respect to the cleaning, fumigating, razing or moving of existing buildings or structures, but shall not include *the charge made for janitorial services;*

(Italics mine.) RCW 82.04.050.

The court's opinion, I think, dwells too much on the practical side of janitorial work and too little on the practical side of collecting taxes. It fails to observe, I believe, a basic rule of construction in taxation that the taxing power is nearly plenary, and the exceptions to its application should be strictly construed. In expanding the term *janitorial services* to include the vacuum cleaning of furnaces, chimneys and flues by an independent contractor, the court has adopted a holding which runs counter to what I think is an unbroken line of precedents—both that exemptions to a tax statute should be strictly construed and that the long-held interpretation and application of a revenue collecting agency of the state are entitled to great interpretative weight. Moreover, in ascertaining what it is the legislature is taxing and what is being exempted, "Dictionary definitions and judicial decisions from other states are not of much assistance." *Stokely-Van Camp, Inc. v. State,* 50 Wn.2d 492, 312 P.2d 816 (1957), at 496. Unless the item or procedure subject to the tax is nearly identical to that in the case, our own decisions would not be definitive either.

Referring now to the taxing measure vis-a-vis the declared exemption, the law requires a narrow construction of the latter. "[A]n exemption in a statute imposing a tax must be strictly construed in favor of the application of the tax and against the person claiming the exemption." *Yakima Fruit Growers Ass'n v. Henneford,* 187 Wash. 252, 60 P.2d 62 (1936), at 258; *All-State Constr. Co. v. Gordon,* 70 Wn.2d 657, 425 P.2d 16 (1967). Taxation is the rule and exemption is the exception. *Fibreboard Paper Prods. Corp. v. State,* 66 Wn.2d 87, 401 P.2d 623 (1965). Anyone claiming a benefit or deduction from a taxable category has the burden of showing that he qualifies for it. *Group Health Coop. of Puget Sound, Inc. v. State Tax Comm'n,* 72 Wn.2d 422, 433 P.2d 201 (1967).

The court's opinion, I think, not only fails to apply the rules laid down by these cases but runs actually contra to them. By including the taxpayer's activities among those described in the statute as janitorial services, it makes the exemption or benefit the rule and the tax the exception.

The court's opinion, also, I think, takes a long and established administrative procedure too lightly. The levying and collecting of taxes constitutes one of the vital and continuing processes of government—one which inevitably confronts the legislature regularly each session. Thus, when the tax commission, now the Department of Revenue, in 1959 promulgated its rule 170 for the collection of the retail sales taxes from persons who hired others to vacuum clean their furnaces and flues, it did so advisedly and explicitly, as follows:

> The Retail Sales Tax does not apply to charges made for janitorial services nor for the mere leveling of land used in commercial farming or agriculture. The tax does apply, however, *in respect to contracts for cleaning furnaces, chimneys* or the exterior walls of buildings, as well as to earth moving, land clearing and the razing or moving of structures, whether or not such services are performed as incidents of a contract to construct, repair, decorate, or improve buildings or structures.

(Italics mine.)

Since the promulgation of rule 170 in 1959, presumably millions of dollars in taxes have been collected under it, and the legislature, meeting in 1961, 1963, 1965, 1967 and 1969 and in extraordinary sessions in 1961, 1965, 1967 and 1969 while rule 170 was kept operable, made no changes whatever in its legal effect. Moreover, RCW 82.04.050 during this period was reenacted five times without change in any part which could reasonably be deemed pertinent to the furnace vacuum cleaning business. I think, therefore, that the circumstances supporting an administrative construction here are extraordinarily strong, involving as they do the day-to-day collection of taxes under them and throughout numerous sessions of the legislature. The operation of rule 170 is the very kind of governmental action which is sure to be brought to the attention of the legislature, for who is more likely to protest governmental actions than an irate taxpayer?

In *State ex rel. Pirak v. Schoettler,* 45 Wn.2d 367, 274 P.2d 852 (1954), the Director of Fisheries, an officer charged with interpreting and enforcing statutes regulating commercial fishing, construed a statute to mean that a "reef net" was not a "fish trap." We sustained the director's interpretation, saying:

> The persuasive force of such an interpretation is strengthened when the legislature, by its failure to amend a statute, "silently acquiesces" in the administrative interpretation.

*Accord: White v. State,* 49 Wn.2d 716, 725, 306 P.2d 230 (1957). Again, in *Tipsword v. Department of Labor & Indus.,* 52 Wn.2d 79, 323 P.2d 9 (1958), and *State ex rel. Blume v. Yelle,* 52 Wn.2d 158, 324 P.2d 247 (1958), silence by the legislature was held to sustain the statutory interpretation of this court in the former and executive interpretation in the latter.

No one, I think, can sensibly contend that a manifestly erroneous construction placed upon a statute by either the courts or administrative agencies should be controlling in the light of legislative inaction (*Latimer v. Western Mach. Exch.,* 40 Wn.2d 155, 241 P.2d 923 (1952)), and I agree

that an administrative or departmental agency cannot by interpretation amend or modify a statute. *Hansen Baking Co. v. Seattle,* 48 Wn.2d 737, 296 P.2d 670 (1956); *Pierce County v. State,* 66 Wn.2d 728, 404 P.2d 1002 (1965). But in the instant case, the court, I think, even in the absence of a long-held administrative interpretation and actual administration of the act, had to strain at semantics to reach the result here obtained.

Thus, whatever ambiguity is claimed for the phrase "janitorial services" was, I think, fully resolved in the long and frequently applied construction given it by the tax commission and the Department of Revenue. We should also heed the explicit interpretation set forth in rule 170. This accords with our statement in *Morin v. Johnson,* 49 Wn.2d 275, 279, 300 P.2d 569 (1956), and in *In re Estate of Lloyd,* 53 Wn.2d 196, 199, 332 P.2d 44 (1958), that:

> [T]he court should give great weight to the contemporaneous construction of an ordinance by the officials charged with its enforcement. This is especially true where the administrative construction has been accompanied over a period of years by the silent acquiescence of the legislative body.

*Accord: Ropo, Inc. v. Seattle,* 67 Wn.2d 574, 409 P.2d 148 (1965).

The federal courts follow the prevailing rule, too, and give great weight to administrative construction and practice and will not overturn them except for cogent reasons and then only in doubtful cases. *Norwegian Nitrogen Prods. Co. v. United States,* 288 U.S. 294, 77 L. Ed. 796, 53 S. Ct. 350 (1933); *Fisher Flouring Mills Co. v. United States,* 270 F.2d 27 (9th Cir. 1958); *Hood v. United States,* 256 F.2d 522 (9th Cir. 1958); *Western Boat Bldg. Co. v. O'Leary,* 198 F.2d 409 (9th Cir. 1952).

I would, therefore, affirm.

FINLEY and HAMILTON, JJ., concur with HALE, J.