# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FIRST STUDENT, INC., | No. 49979-7-II |
| Appellant, | PUBLISHED OPINION |
| v. | |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | |
| Respondent. | |

BJORGEN, J. — First Student Inc., a business providing transportation services, appeals from an order denying its motion for summary judgment, granting the Department of Revenue (Department) summary judgment, and dismissing its excise tax refund action. In its order, the superior court ruled that First Student's income from transporting students under contracts with various school districts is properly taxed under the Business and Occupation (B&O) tax, but not the Public Utility Tax (PUT).

First Student claims that it provides transportation services to school districts on a "for hire" basis and, therefore, should be taxable under the motor and urban transportation business PUT classifications instead of the B&O tax classification.[1] First Student argues that the term "for hire" is plain on its face and unambiguously means "services provided for compensation," bringing its services under the PUT. The Department interprets the term "for hire" by excise tax

---

[1] First Student would be taxed at a lower rate under the PUT.

rule to provide that school bus operators are taxable under the "other business or service activities" B&O tax classification. This appeal, therefore, revolves around the meaning of "for hire" contained in Title 82 RCW, a term not defined by the statute.

Concluding that the term "for hire" is ambiguous, and the Department's interpretation is entitled to great weight, we affirm.

FACTS

First Student provides transportation services to organizations, including school districts, youth groups, summer camps, and churches, as well as other private parties.[2] Between 1990 and 2014, First Student regularly reported on the B&O tax form the income it received for providing transportation services to school districts under the "other business or service activities" tax classification. Clerk's Papers (CP) at 110-11.

On September 6, 2013, however, First Student requested a letter ruling from the Department regarding the correct tax classification for the revenue it received from its contracts with school districts. First Student explained that it owns and operates school buses and that its customers are primarily various school districts in Washington, including the Seattle School District. First Student argued that the Department should tax it under the PUT classifications, not the B&O tax classification, because its "school buses are motor propelled vehicles that convey students" and "are passenger vehicles for public use that convey students." CP at 128-

---

[2] In 2014, for example, First Student entered into a contract to provide school bus services for the Vashon Island School District. In that contract, First Student agreed to "operate [school] transportation services" and "furnish labor, school buses and bus maintenance, and materials and supplies as required to provide the District with transportation service." Clerk's Papers (CP) at 35. To receive compensation, First Student agreed to provide the Vashon Island School District with an invoice for the services rendered during the preceding month. The contract's service requirements state that "[t]he District reserves the right to approve each route and route stop, and to determine which students are to be transported and the manner of transportation." CP at 38.

29. The Department issued a letter ruling declining to change its longstanding interpretation that school bus operators are subject to the "other business or service activities" B&O tax classification. CP at 134-35.

First Student filed an appeal with the Department's Appeals Division seeking reversal of the Department's letter ruling. While the appeal was pending, First Student submitted three administrative refund requests to the Department and sought to reclassify its income reported under the "other business or service activities" B&O tax classification to the "motor transportation business" and "urban transportation business" PUT classifications. The refund request also sought the difference in taxes paid resulting from the Department's alleged incorrect tax classification. The Department denied the administrative refund requests, and First Student submitted a supplemental petition to the Department's Appeals Division appealing the refund request denials. The Appeals Division consolidated the refund requests into First Student's appeal of the letter ruling. After review, the Appeals Division issued a determination that denied First Student's consolidated appeal.

In accord with RCW 82.32.180, First Student then filed a notice of appeal and complaint for refund of excise taxes with the Thurston County Superior Court. First Student filed a motion for summary judgment, claiming its transportation services were taxable under the PUT classifications but exempt from B&O taxation under former RCW 82.04.310 (2010). First Student also requested a refund of the B&O taxes it paid between December 1, 2008 and December 31, 2014. In its response to First Student's motion for summary judgment, the Department requested that the superior court grant it judgment as a matter of law, arguing that the B&O tax properly applies to revenues received by First Student for providing bus transportation services to school districts.

In response to First Student's requests for admission, the Department admitted that "during the Refund Period the vehicles operated by First Student were used to transport people." CP at 26. The Department also admitted that "First Student operates vehicles with passengers," but did not "admit that the vehicles were 'passenger vehicles' because the term is not defined. Washington law distinguishes between buses and 'passenger vehicles.'" CP at 26. The Department also admitted that "during the Refund Period First Student received compensation for transporting passengers" and that "during the Refund Period the students transported by First Student . . . were passengers." CP at 27. The Department denied that "during the Refund Period First Student transported persons for hire." CP at 27.

The superior court found that there were no genuine issues of material fact. The superior court concluded that the Department was entitled to judgment as a matter of law because First Student's income from transporting students under its contracts with school districts was properly taxed under the B&O tax classification "other business or service activities," former RCW 82.04.290 (2013), not under the PUT. Accordingly, the superior court denied First Student's motion for summary judgment and granted summary judgment in the Department's favor. The court dismissed First Student's tax refund claim with prejudice.

First Student appeals.

ANALYSIS

I. SUMMARY JUDGMENT

First Student argues that the superior court erred when it denied First Student's motion for summary judgment, granted summary judgment to the Department, and dismissed First Student's excise tax refund action. We disagree.

A.    Standard of Review

We review questions of law on appeal from summary judgment de novo. *Avnet, Inc. v. Dep't of Revenue*, 187 Wn.2d 44, 49, 384 P.3d 571 (2016). Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Because there appear to be no genuine issues of material fact in this case, we review only whether the facts require upholding the summary judgment as a matter of law. *Fahn v. Cowlitz County*, 93 Wn.2d 368, 373, 610 P.2d 857 (1980).

"In a tax refund case, we review legal conclusions de novo." *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 316, 190 P.3d 28 (2008). We also review de novo matters of statutory interpretation and may substitute our interpretation of the law for that of the agency. *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004).

B.    Current Department of Revenue Tax Classification of Businesses Operating School Buses

The state of Washington imposes the B&O tax "for the act or privilege of engaging in business" within the state. Former RCW 82.04.220(1) (2011). Business activities other than those that are specifically taxable elsewhere in chapter 82.04 RCW are subject to the "other business or service activities" B&O tax classification. Former RCW 82.04.290(2).

Former RCW 82.04.310 provides that the B&O tax "does not apply to any person in respect to a business activity with respect to which tax liability is specifically imposed under the provisions of chapter 82.16 RCW."

The PUT is imposed under chapter 82.16 RCW, and applies to motor transportation and urban transportation businesses, among others. Former RCW 82.16.020(1)(d), (f) (2013). Therefore, if First Student's business activity constitutes either motor transportation business or urban transportation business, then the B&O tax does not apply.

"Motor transportation business" is defined as:

> [T]he business (except urban transportation business) of operating any motor propelled vehicle by which persons or property of others are conveyed *for hire*, and includes, but is not limited to, the operation of any motor propelled vehicle as an auto transportation company (except urban transportation business), common carrier, or contract carrier as defined by RCW 81.68.010 and 81.80.010.

Former RCW 82.16.010(6) (2010) (emphasis added).

"Urban transportation business" is defined as:

> [T]he business of operating any vehicle for public use in the conveyance of persons or property *for hire*, insofar as (a) operating entirely within the corporate limits of any city or town, or within five miles of the corporate limits thereof, or (b) operating entirely within and between cities and towns whose corporate limits are not more than five miles apart or within five miles of the corporate limits of either thereof. Included herein, but without limiting the scope hereof, is the business of operating passenger vehicles of every type.

Former RCW 82.16.010(12) (emphasis added).

The Department adopted WAC Rule 180 to administer this statute. Rule 180 provides, in part:

> (5) What does "motor transportation" and "urban transportation" include? Motor and urban transportation include the business of operating motor-driven vehicles, on public roads, used in transporting persons or property belonging to others, on a *for-hire* basis. These terms include the business of:

6

> (a) Operating taxicabs, armored cars, and contract mail delivery vehicles, *but do not include* the businesses of operating auto wreckers or towing vehicles (taxable as sales at retail under RCW 82.04.050), *school buses*, ambulances, nor the collection and disposal of solid waste (taxable under the service and other activities B&O tax classification).

WAC 458-20-180 (emphasis added). Consequently, the Department's current excise tax rules specifically exclude businesses operating school buses from the PUT classifications.

On the other hand, WAC Rule 224 specifically provides that income derived from operating school buses is subject to the "other business or service activities" B&O tax. WAC 458-20-224. Rule 224(2) provides, in part:

> Persons engaged in any business activity, other than or in addition to those for which a specific rate is provided in the statute, are taxable under a classification known as *service and other business activities*, and so designated upon return forms. In general, it includes persons rendering professional or personal services to persons (as distinguished from services rendered to personal property of persons) such as . . . *school bus operators*.

(Emphasis added.)

Therefore, under the Department's current excise tax rules, businesses operating school buses are taxable under the "other business or service activities" B&O tax classification. The question before us is whether these rules are consistent with the governing statutes.

C.    Plain Meaning and Statutory Context

First Student argues that the plain meaning of the statutory term "for hire" is unambiguous. For the following reasons we conclude the term "for hire," as used in former RCW 82.16.010, is ambiguous.

If possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Cashmere Valley Bank v. Dep't of Revenue*, 181 Wn.2d 622, 631, 334 P.3d 1100

(2014). Where statutory terms are undefined, we will commonly resort to dictionaries to ascertain the plain meaning of statutory language. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). When statutory language is clear, we assume that the legislature "meant exactly what it said" and apply the plain language of the statute. *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997).

If, after consideration of all relevant statutory language, "the statute remains susceptible to more than one reasonable meaning," "the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Campbell & Gwinn, LLC v. Dep't of Ecology*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002). We neither construe statutory language to reach absurd or strained consequences nor question the wisdom of a statute, even where its results seem harsh. *Stroh Brewery Co. v. Dep't of Revenue*, 104 Wn. App. 235, 239, 15 P.3d 692 (2001). "In interpreting and construing a statute, we must give effect to all of the language, rendering no portion meaningless or superfluous." *Id.* at 239-40.

This case hinges on the meaning of "for hire" as used in former RCW 82.16.010(6) and (12). In 1943, the legislature amended the PUT definition for "urban transportation business" and added the term "for hire." LAWS OF 1943, ch. 156, § 10A(j)(2). In 1955, the legislature likewise amended the PUT definition for "highway [now 'motor'] transportation business" and again added the term "for hire." LAWS OF 1955, ch. 389, § 28. The legislature has never defined the term "for hire" used throughout former RCW 82.16.010.

When a term has a well-accepted, ordinary meaning, a general purpose dictionary may be consulted to establish the term's definition. *City of Spokane ex rel. Wastewater Mgmt. Dep't v. Dep't of Revenue*, 145 Wn.2d 445, 454, 38 P.3d 1010 (2002). However, when a technical term is used in its technical field, the term should be given its technical meaning by using a technical

rather than a general purpose dictionary to determine the term's definition. *Id*. at 454. In this case, it is unclear whether the legislature intended the term "for hire" to be given its ordinary or technical, legal meaning.

First Student argues that the plain meaning of the term "'for hire'" is "'available for use or service in return for payment.'" Br. of Appellant at 10 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1072 (3d ed.) (2002)).[3] We generally refrain, though, from applying modern definitions to time-worn statutes and will attempt to glean a definition from a dictionary in print at the time the legislature amended the statute. *See League of Educ. Voters v. State*, 176 Wn.2d 808, 821, 295 P.3d 743 (2013) ("The court gives the words 'their common and ordinary meaning, as determined at the time they were drafted.'") (quoting *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 477, 90 P.3d 42 (2004)). The general purpose dictionaries we reviewed from the time period do not have a plain language definition of the phrase "for hire"; instead, they contain separate definitions of the terms "for" and "hire."

There are numerous definitions of the word "for," each of which depends on context. *Webster's Third New International Dictionary* 984 (2d ed.) (1954), defined "for" in relevant part, as follows:

> 2. Indicating the end with reference to which anything acts[,] serves, or is done, as: . . . a preparation towards, against, or in view of; having as goal or object; in order to be, become, or act as; to serve as, or as part of; to supply the need of; in order to effect; as, one dresses *for* dinner; he has enlisted *for* a solider; built *for* a church; only wild game *for* food; he labored *for* the good of humanity.

> *Webster's Third New International Dictionary* 1182 (2d ed.) (1954) defined "hire" as follows:

---

[3] First Student cites *Webster's Third New International Dictionary* from the year 2000 without providing the edition; however, we were only able to verify the definition provided by First Student in the edition we cited here.

1. To engage or purchase the labor or services of (anyone) for compensation or wages; as, to *hire* a servant, an agent, or an advocate. 2. To procure (any chattel or estate) from another person, for temporary use, for a compensation or equivalent, as, to *hire* a farm for a year; to *hire* money. 3. To grant the temporary use of, for compensation; to engage to give the service of, for a price; to let; lease.

Thus, the ordinary meaning of the term "for hire" at the time the statute was drafted could be understood as effecting the engagement or purchase of labor or services for compensation or wages.

The Department argues we should give the term "for hire" its familiar legal (or technical) meaning, citing *Cashmere*, 181 Wn.2d at 634. In 1951, *Black's Law Dictionary* defined the term "for hire or reward" as follows:

[T]o transport passengers or property of other persons than owner or operator of the vehicle for a reward or stipend, to be paid by such passengers, or persons for whom such property is transported, to owner or operator. *Michigan Consol. Gas Co. v. Sohio Petroleum Co.*, 32 N.W.2d 353[,] 321 Mich. 102 [1948].

BLACK'S LAW DICTIONARY 773 (4th ed.) (1951); *see also* BLACK'S LAW DICTIONARY 773 (4th ed.) (1957) (definition unchanged); 17A THOMPSON-WEST, WORDS & PHRASES 37 (Permanent Ed.) (2004) (providing the same definition).

A fair reading of this particular definition makes one facet of the term "for hire" apparent: any compensation or remuneration (*i.e.*, "reward or stipend") paid to "transport passengers or property" was "to be paid by such passengers." In other words, the legal (or technical) meaning of the term "for hire" at the time the statute was drafted contemplated that the "passengers" would be directly responsible for any compensation paid.

In considering the plain language of former RCW 82.16.010, we must also evaluate the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Cashmere*, 181 Wn.2d at 631.

First Student argues that the Department's interpretation of the term "for hire" conflicts with the statutory context and its own administration of PUT. It maintains that "[w]hen the same words are used in different parts of the same statute, it is presumed that the Legislature intended that the words have the same meaning," citing *Timberline Air Service, Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 313, 884 P.2d 920 (1994). Br. of Appellant at 21. It highlights that the term "for hire" is used or referenced multiple times throughout former RCW 82.16.010 and the term should be read in a manner that consistently applies to each definition of businesses subject to the PUT. For example, First Student argues it would be absurd to apply the legal (or technical) definition of "for hire" urged by the Department to a "network telephone service." Br. of Appellant at 22-23.

The PUT definitions comprise a variety of public utility businesses, most of which do not involve transport of persons or property.[4] Network telephone service, for example, is defined by former RCW 82.16.010(7)(b)(ii) as

> the providing by any person of access to a telephone network, telephone network switching service, toll service, or coin telephone services, or the providing of telephonic, video, data, or similar communication or transmission *for hire*, via a telephone network, toll line or channel, cable, microwave, or similar communication or transmission system.

(Emphasis added.) If we accept the Department's view of the definition of the term "for hire" in the context of transportation services, then network telephone service would be subject to the PUT as a "for hire" service only if each user paid for each use of the service when it occurred.

---

[4] Aside from "motor transportation business" and "urban transportation business," former RCW 82.16.010 uses the term "for hire" in the following definitions: gas distribution business; light and power business; network telephone service; railroad business; telegraph business; tugboat business; and water distribution business.

This is incongruous with customary notions of "network telephone service," thus supporting First Student's position.

The Department urges that its interpretation that transportation provided by school bus operators is not provided on a "for hire" basis can be harmonized with the other related definitions in former RCW 82.16.010. The Department cites *American Legion Post #149 v. Dep't of Health*, 164 Wn.2d 570, 585, 192 P.3d 306 (2008), for the proposition that statutes are to be read together, whenever possible, to achieve a harmonious statutory scheme and to avoid an interpretation that creates conflicts between different *related* provisions. The Department argues its interpretation does not create conflict between different related provisions because the legislature's other uses of the term "for hire" involve public utilities unrelated to the transport of persons or property. The Department asserts that the only other definition in former RCW 82.16.010 that involves the transport of persons or property is "railroad business." "Railroad business" means the business of operating any railroad, by whatever power operated, for public use in the conveyance of persons or property for hire. Former RCW 82.16.010(8). The Department claims there is no inconsistency in applying the interpretation that "for hire" requires the payment "to be paid by such passengers." Br. of Resp't at 29. The Department concludes its interpretation of the term "for hire" as applied to the transport of person or property is wholly consistent with related provisions in former RCW 82.16.010.

The Department is correct that the term "for hire" is applied to a miscellany of enterprises in former RCW 82.16.010. By their nature, these enterprises are not all equally amenable to requiring payment for each use. Thus, reading "for hire" in the context of telephone service not to require payment for each separate use is not necessarily inconsistent with reading "for hire" to require payment for each use from bus passengers. Still, a statute must be read in light of its

various provisions, rather than in a piecemeal fashion, *American Legion*, 164 Wn.2d at 585, and First Student is correct that varying interpretations of the same term, "for hire," in the same statute, arguably do not result in harmonious construction.

Ultimately, the question is whether the legislature intended to draw distinctions in the use of the term "for hire" among the various definitions contained in former RCW 82.16.010; that is, whether the legislature intended the meaning of "for hire" to be mutable depending on the specific business classification in question. Review of the plain meaning and statutory context of former RCW 82.16.010 leads us to one conclusion: the statute remains susceptible of more than one reasonable meaning. Accordingly, we hold that the term "for hire" is ambiguous and turn to the resolution of that ambiguity.[5, 6, 7]

D.        Agency Deference, Contemporaneous Construction, and Legislative Acquiescence

Simply put, First Student argues we should not accord deference to the Department's exclusion of school buses under WAC Rule 180. We disagree.

Where a statute is ambiguous, but within the realm of agency expertise, we will accord the agency's interpretation great weight. *Port of Seattle*, 151 Wn.2d at 593. Deference to an

---

[5] The Department argues that the legislature distinguishes the term "for hire" and "for compensation" and points us to Title 46 RCW. Br. of Resp't. at 34-35. First Student argues Title 46 RCW is irrelevant to this case but, in any event, consistent with its construction of the term "for hire." Because this statute is unrelated to the statutory scheme at issue in this case, we do not address these arguments.

[6] First Student argues that the Department's construction of the term "for hire" would exclude virtually all charter bus operators from the motor and urban transportation business definitions. The Department argues its interpretation is consistent with the statutory context as applied to charter bus transportation. These arguments do not affect our conclusion that the term "for hire" is ambiguous.

[7] The Department points us to out-of-state authority to support its construction that school bus transportation is not provided "for hire." We need not turn to non-binding, out-of-state authority to resolve the matter before us.

agency's interpretation of its own regulations is appropriate. *Id.* More specifically, because the Department is the agency designated by the legislature to "[a]ssess and collect all taxes and administer all programs relating to taxes," former RCW 82.01.060 (2011), our Supreme Court has held that the Department's interpretation of relevant statutes and regulations is entitled to great weight. *See id.*; *see also Pringle v. State*, 77 Wn.2d 569, 573, 464 P.2d 425 (1970). *Pringle* held that "interpretive rules and regulations promulgated by the Tax Commission are entitled to great weight in resolving doubtful meanings of taxing laws." 77 Wn.2d at 573.

In interpreting a statute, we also accord great weight to the contemporaneous construction placed on it by officials charged with its enforcement, particularly where the legislature has silently acquiesced in that construction over a long period of time. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 780, 903 P.2d 443 (1995). The repeated reenactment of a statute, without repudiating a prior administrative interpretation of it, provides some evidence of legislative acquiescence, but it is not wholly conclusive. *Pringle*, 77 Wn.2d at 573. In such cases, legislative silence is only a factor to be considered. *Id.*

Through multiple amendments to the excise tax statutes over many decades, the Department has consistently interpreted the law to subject contracted school bus operations to the B&O tax. The legislature has never overruled that interpretation. The Revenue Act of 1935, Laws of 1935, chapter 180 (Act) provides the foundation of our contemporary tax code.[8] The

---

[8] Tax Commission implementing regulations related to school bus operations can be traced as far back as 1934. For example, one Tax Commission regulation classified "[t]he business of transporting school children under contract with school districts" as "service or other business." CP at 330 (WASH. STATE TAX COMM'N, Business Tax Regs., art. 294.12 (1934)). The classification included persons operating school buses in situations where the school district became the lessee of the vehicle under an agreement and where the owner of the vehicle entered into a contract with a school district to provide services. It similarly applied to "certified or other licensed motor vehicle carriers operating, under contract, buses, carrying school children exclusively." *Id.*

Act provided for the levy and collection of a tax and excise upon the act or privilege of engaging in business activities in the state of Washington, and included a title called "Business and Occupation Tax." LAWS OF 1935, ch. 180, §§ 4-15. The Act also included a title called "Public Utility Tax." LAWS OF 1935, ch. 180, §§ 36-37.

In 1936, the Tax Commission promulgated contemporaneous rules implementing the Act. WASH. STATE TAX COMM'N RULES & REGULATIONS (1936). As relevant, WAC Rule 180 governed highway transportation companies and described the applicable tax classifications for various business activities. *Id*. at 106. The PUT classification applied to "all revenue derived from the carriage of passengers or freight, including baggage, and the revenue derived from pick-up and delivery services rendered." *Id*. The B&O "business and other service activities" tax classification applied to "contracts with schools districts to transport school children," among other matters. *Id*.

In 1943, the legislature amended the PUT "urban transportation business" and "highway transportation business" definitions. LAWS OF 1943, ch. 156, § 10A(j)(2), (i). The Tax Commission contemporaneously promulgated amended rules that included various revisions to reflect the legislative amendments. WASH. STATE TAX COMM'N RULES & REGULATIONS (1943). Of import, Rule 180 included a "NOTE" that "[p]ersons operating school buses for hire are taxable under the classification of 'Service and Other Activities' of Title II (Business and Occupation Tax) at the rate of 1/2 of 1% of gross income." *Id*.

In 1949, the legislature again amended the PUT "urban transportation business" and "highway transportation business" definitions. LAWS OF 1949, ch. 228, § 10(i), (j). The Tax Commission did not revise Rule 180 until 1954, when it deleted the "NOTE" contained in the 1943 rule above and replaced it with the following language:

15

> The terms "highway transportation" and "urban transportation" *do not include the business of operating school buses* or ambulances, the collection and disposal of refuse and garbage, or hauling for hire exclusively over public roads. Gross income from *these business must be reported under the "Service and Other Activities" classifications of the Business and Occupation Tax.*

WASH. STATE TAX COMM'N RULES & REGULATIONS, Rule 180 (1954) (emphasis added).

In 1955, the legislature again amended the PUT "highway transportation business" definition. LAWS OF 1955, ch. 389, § 28(9). Instead of including only motor propelled vehicles operating as an "auto transportation company, common carrier or contract carrier," the term as amended included motor propelled vehicles "by which persons or property are conveyed for hire." *Id*. The statute continued to reference "the operation of any motor propelled vehicle [operated] as an auto transportation company, . . . common carrier or contract carrier" as illustrative examples. *Id*. The legislature made no substantive changes to the definition of "urban transportation business."

Once again, the Tax Commission contemporaneously promulgated amended rules that included various revisions to reflect the legislative amendments. WASH. STATE TAX COMM'N RULES & REGULATIONS, Rule 180 (1956). Rule 180 provided, in pertinent part, as follows:

> The terms [highway transportation and urban transportation] do not include the business of operating auto wreckers or towing vehicles, *school buses*, ambulances, nor the collection and disposal of refuse and garbage. Gross income from these business must be reported under the "Service and Other Activities" classifications of the Business and Occupation Tax.

WASH. STATE TAX COMM'N RULES & REGULATIONS, Rule 180 (1956) (emphasis added). In addition, the Tax Commission revised Rule 224 to include "school bus operators" in its list of "persons rendering professional or personal services to persons" that are taxable under the "other business or service activities" B&O tax classification. *Id*. Since 1956, Rule 180 (WAC 458-220-180(5)) and Rule 224 (WAC 458-20-224(2)) remain largely unchanged.

16

Between 1956 and 2015, the legislature amended the PUT definitions' section 18 times, but none of the amendments materially altered the definitions in this case. Two of the amendments resulted in minor substantive alterations to the definition of "highway transportation business." In 1961, the legislature replaced the term "highway transportation business" with "motor transportation business" and excluded from its application the transportation of logs or other forest products exclusively upon private roads or private highways. LAWS OF 1961, ch. 293, § 12. In 2015, the legislature amended the term "motor transportation" to exclude the business of "log transportation," regardless of whether on private roads or highways. LAWS OF 2015, 3d Spec. Sess., ch. 6, § 702. Although the legislature enacted various changes to the relevant section of the statute, it has never disturbed the agency's interpretation that school bus operators are taxable under the "other business or service activities" B&O tax classification.

Interpretive rules and regulations promulgated by the Department are entitled to great weight in resolving doubtful meanings of taxing laws, *Pringle*, 77 Wn.2d at 573, especially where the legislature has silently acquiesced in that construction over a long period of time. *In re Sehome Park*, 127 Wn.2d at 778-81. By 2013, the legislature, the Department, and taxpayers had nearly 80 years of experience with the statute in general and nearly 60 years of experience with the specific words at issue in this case. During that period of time, the Department and its predecessor commission interpreted the statutory words by rule to provide that school bus operators are taxable under the "other business or service activities" B&O tax classification. Also during that time, the legislature did nothing to upset the agency's approach. We decline to disturb that interpretation.

With that, we hold that the superior court did not err when it denied First Student's motion for summary judgment, granted summary judgment to the Department, and dismissed First Student's excise tax refund action.

## CONCLUSION

We affirm the superior court's order denying First Student's motion for summary judgment, granting summary judgment to the Department, and dismissing First Student's excise tax refund action.

Bjorgen, J.

We concur:

Worswick, P.J.

Sutton, J.