[No. 23248. *En Banc.* July 24, 1931.]

THE STATE OF WASHINGTON, *on the Relation of A. M. Atwood et al., Appellant,* v. MELVIN S. WOOSTER, *as County Assessor, Respondent.*[1]

[1]Reported in 2 P. (2d) 653.

*Hyland, Elvidge & Alvord,* for appellant.

*The Attorney General, John A. Homer, Assistant, Robert M. Burgunder,* and *Arthur M. Hare,* for respondent.

*Poe, Falknor, Falknor & Emory, Grinstead, Laube, Laughlin & Meakim, Kerr & McCord, Preston, Thorgrimson & Turner, Shorts & Denney, Todd, Holman & Sprague,* and *Tanner & Garvin, Amici Curiae.*

TOLMAN, C. J.—Relators made application to the trial court for a writ of mandate, to be directed to the respondent as county assessor of King county, requiring him to list for purposes of taxation as of March 1, 1931, all moneys in bank, mortgages, notes, money, certificates of deposit, tax certificates, judgments, state, county, municipal and school district bonds and warrants, and all other property, both tangible and intan-

gible, which might be found in his county. Respondent appeared and demurred, and his demurrer having been overruled, he answered, making certain denials and setting up, as affirmative defenses: (1) Chapter 96, page 279, Laws of 1931, pleading that thereunder he had no power to assess for taxation purposes any of the property described in that act; (2) that such property is exempt from taxation under the amendment to the constitution adopted in November, 1930; and (3) that, if such property is taxable, he has no authority, means or machinery to assess it.

Demurrers were interposed to these affirmative defenses, and were overruled. Evidence was received to the effect that large sums of money and intangible property of various kinds existed in the county, and that respondent did not intend, and believed that he had no right under the law, to assess such property. Other facts were made to appear which we do not now regard as material.

From a judgment denying the writ, the relators have appealed.

Prior to the adoption by the people of the constitutional amendment of 1930, the first two sections of article VII of our constitution provided, among other things: (1) That all property not exempt under the Federal law or under the constitution ''shall be taxed in proportion to its value;'' (2) that the legislature must provide for a uniform and equal rate of assessment and taxation on all property according to its value in money. We do not now notice sections 3 and 4, because their provisions are not here material, and, moreover, they were in effect re-adopted by the amendment.

It was under these former constitutional provisions that this court held, in *State ex rel. Wolfe v. Parmenter*, 50 Wash. 164, 96 Pac. 1047, 19 L. R. A. (N. S.) 707,

that mortgages, bonds, warrants and other like intangibles might by the legislature be classified as credits, and so escape direct taxation, but that money could not be so classified. The same subject was again reviewed in *State ex rel. Egbert v. Gifford*, 151 Wash. 43, 275 Pac. 74, where the decision in the *Parmenter* case was followed, and again it was held that intangibles might by the legislature be classed as credits, and thus exempted from direct taxation. But it was there expressly pointed out that the *Parmenter* case did not hold that the legislature must so exempt credits, nor did this court ever so hold.

The constitutional provisions upon which these two cases were decided were entirely swept away by the amendment of 1930, and in their place we have something distinct and different. The new and substituted constitutional provisions read:

"Section 1. The power of taxation shall never be suspended, surrendered or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. All real estate shall constitute one class: *Provided,* That the Legislature may tax mines and mineral resources and lands devoted to reforestation by either a yield tax or an *ad valorem* tax at such rate as it may fix, or by both. Such property as the Legislature may by general laws provide shall be exempt from taxation. Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation. The Legislature shall have power, by appropriate legislation, to exempt personal property to the amount of three hundred dollars ($300) for each head of a family liable to assessment and taxation under the

provisions of the laws of this state of which the individual is the actual *bona fide* owner.'' Laws of 1929, page 499, chapter 191.

What was the purpose of this drastic and radical change? Perhaps a fair answer is to be found in the language employed in the *Parmenter* case, *supra,* where it is said:

"It may be stated in this connection, as a matter of common knowledge, that one of the most fruitful sources of inequality in taxation is the attempt to tax credits. Laws for that purpose can never be effectively enforced. Efforts to conceal the existence of the credits are so successful that a few honest persons pay the taxes and the large majority of holders do not. Moreover, in practical experience, the tax is not really paid by the holders of the credit, but it is paid by his debtor.''

These were the evils sought to be eradicated and abolished, and to that end the requirements that a uniform tax be assessed against all property were swept away, and in their place were adopted constitutional provisions which say nothing about uniformity, and do not provide that all property shall be taxed, but which do permit of the classification of all property, and provide that all taxes shall be uniform upon the same class of property, and also that such property as the legislature may provide shall be exempt from taxation. So that the legislature, freed from the former limitations, may now determine what property shall be taxed, the different rates upon which different classes of property shall be taxed, and what property shall pay no tax at all, subject only to the limitations found in the new constitutional provisions.

Under these new constitutional provisions, the act of 1931, chapter 96, Laws of 1931, page 279, was duly enacted, with an emergency clause placing it in

immediate effect. The act, aside from the emergency clause, reads:

"Section 1. All monies and credits including mortgages, notes, accounts, certificates of deposit, tax certificates, judgments, state, county and municipal bonds and warrants and bonds and warrants of other taxing districts, bonds of the United States and of foreign countries or political subdivisions thereof and the bonds, stocks or shares of private corporations shall be and hereby are exempted from *ad valorem* taxation."

Here the legislature placed money and what are popularly called credits or intangibles all in one general class. We see nothing unreasonable in such a classification, because, as pointed out in the language quoted from the *Parmenter* case, these are all of the same fugitive character, permitting of ready concealment, and alike, when an attempt is made to tax them, resulting in non-enforcement and in inequality.

That the people, in amending the constitution, may have believed that the legislature would provide for such a lesser rate of taxation on this class of property as would lead to proper results and a lessening of the tax burden on other property, instead of its total exemption, is a matter between the legislature and those to whom it is responsible, and with which we as a court have nothing to do.

But it is argued that, under the case of *State ex rel. Chamberlin v. Daniel,* 17 Wash. 111, 49 Pac. 243, the legislature has no power or authority to create such an exempt class of property. Again it must be remembered that the *Daniel* case was decided under the old constitutional provisions, and there much stress is laid upon those provisions which have been wholly abrogated and abolished. When that case is carefully read, and the attempt is made to apply its several arguments

to the new constitutional provisions, it is at once apparent that it can not now be an authority against the classification and exemption under attack. The sentence in the new constitutional provision, "Such property as the legislature may by general laws provide shall be exempt from taxation," is wholly complete within itself, and likewise it is wholly independent of that which precedes or which follows it. Its language is too plain to require any construction, and must and does mean just what the words used indicate.

Appellants seem to argue that the 1931 legislative act is in violation of the fifth and fourteenth amendments to the Federal constitution. As we understand it, the fifth amendment is a limitation upon the Federal government, and not upon the sovereignty of the several states. Surely if the states are sovereign in anything, it must be in the matter of taxation, upon which their very life depends.

Nor do we think there is any denial of the equal protection of the laws in the constitutional sense in the act of 1931. Such a classification for purposes of taxation seems to have been sustained by the supreme court of the United States. *Puget Sound Power & Light Co. v. King County,* 264 U. S. 22, 68 L. Ed. 541; *Bell's Gap Railroad Co. v. Pennsylvania,* 134 U. S. 232, 33 L. Ed. 892.

The judgment of the trial court is right and must be, and it is, affirmed.

PARKER, HOLCOMB, MITCHELL, BEALS, MAIN, MILLARD, and BEELER, JJ., concur.