[No. 42786.    En Banc.    December 13, 1973.]

*In the Matter of* GENTLE S. ALLEN, *Appellant,* v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent.*

146

*Stephen M. Randels,* for appellant.

*Slade Gorton, Attorney General, Joseph M. Littlemore* and *Daniel C. Rooney, Assistants,* for respondent.

ROSELLINI, J.—On May 11, 1970, the appellant was discharged from his job because of absenteeism. In opening his claim with the Employment Security Department on May 14, 1970, he stated that he was separated from his employment due to "lack of work—layoff." On June 17, 1970, the Employment Security Department mailed to the appellant a determination notice advising him that because he was discharged for misconduct, he was disqualified for benefits for the week of May 10, 1970, and for a period not to exceed 10 weeks beyond the week in which he was discharged. He was further advised that because of his misrepresentation of fact in his application, benefits were denied for the calendar week ending May 30, 1970, and an additional period of 26 weeks thereafter, commencing with the first week for which he completed a claim for waiting period or benefits, following the delivery or mailing date of the determination notice.

An appeal was taken to the appeal tribunal of the Employment Security Department as authorized by RCW 50.32.020. In the meantime, on June 22, 1970, the appellant filed a claim for benefits in accordance with the advice which was given him by the department on its form S.F. No. 5354:

SPECIAL INFORMATION FOR CLAIMANTS: If you wish to protect your right to benefits while your appeal is pending, you must continue to report to your local office as

usual for each week which you are unemployed. Even though an appeal decision may find you eligible for benefits, none will be paid for any week for which you have not filed a claim in accordance with reporting requirements.

The department's determination was affirmed by the appeal tribunal, which also ruled that the 26-week period of disqualification imposed because the appellant made a false statement in his application should begin to run at the conclusion of the 10-week period of disqualification imposed because he was discharged for misconduct.

As authorized in RCW 50.32.070, the appellant petitioned the Commissioner of Employment Security for a review of the determination of the appeal tribunal. The commissioner affirmed the determination and the appellant appealed to the superior court, as authorized by RCW 50.32.120. The superior court, while expressing doubt that the department had correctly construed RCW 50.20.070 (Laws of 1953, 1st Ex. Sess., ch. 8, § 10) in deciding that the 26-week period of disqualification provided for therein should commence at the conclusion of the first period of disqualification imposed upon the appellant, nevertheless upheld the department's determination, expressing the opinion that it was bound by the administrative construction of the act. The sole question before the court on this appeal is whether that conclusion of the trial court was correct.

RCW 50.20.070 (prior to its amendment by Laws of 1973, 1st Ex. Sess., ch. 158, § 5) provided:

> Irrespective of any other provisions of this title an individual shall be disqualified for benefits for any week with respect to which he has knowingly made a false statement or representation involving a material fact or knowingly failed to report a material fact and has thereby obtained or attempted to obtain any benefits under the provisions of this title, and for an additional twenty-six weeks commencing with the first week for which he completes a claim for waiting period or benefits following the date of the delivery or mailing of the determination of disqualification under this section . . .

■■ In interpreting a statute the court looks first at the language of the statute, and if the language is clear and the meaning plain, the statute needs no construction and the court should neither read into it things which are not there nor amend it by construction. *State ex rel. Tarver v. Smith,* 78 Wn.2d 152, 470 P.2d 172 (1970), *cert. denied,* 402 U.S. 1000, 29 L. Ed 2d 166, 91 S. Ct. 2175 (1971). The statute before us contains no patent ambiguity. It states quite plainly that the time at which the additional 26-week period of disqualification commences shall be the first week for which the claimant completes a claim, after mailing or delivery of the determination of disqualification under that section, and the department does not suggest that the provision is rendered ambiguous when read in connection with any other provision of the statute.

While not arguing that the section is ambiguous, the department nevertheless maintains that it must have been the legislative intent that the disqualification periods should run consecutively, since an imposition of consecutive periods of disqualification is a more severe penalty than an imposition of overlapping periods of disqualification.

The trouble with this theory is that such an intent is not expressed in the act. The department concedes that the statutory language which designates the event which starts the running of the period of disqualification—that is, the filing of a claim by the claimant—cannot be ignored. However, it insists that the legislature, in speaking of a claim, must have had reference to a claim upon which benefits could otherwise be paid.

To so construe the provision requires the addition of words which are not presently included therein. The department does not suggest that an applicant for unemploy-· ment compensation cannot properly file a claim unless he is in fact entitled to compensation for the particular week covered by the claim. It is apparent that its own regulations and advice to applicants contemplate that claims must

be filed in order to preserve the eligibility of a claimant whose right to benefits is under consideration by an appeal tribunal. Also it is apparent that the claim referred to in the statute—the first claim filed after notification of the determination—is a noncompensable claim. Therefore it cannot be surmised that the legislature, when it used the word "claim" in this section, meant to restrict it to compensable claims.

RCW 50.20.140 provides:

> The term "claim for waiting period" shall mean a certification, after the close of a given week, that the requirements stated herein for eligibility for waiting period have been met. The term "claim for benefits" shall mean a certification, after the close of a given week, that the requirements stated herein for eligibility for receipt of benefits have been met.

In implementing this provision, respondent has promulgated the following regulation:

> [C]laims for . . . benefits shall be made in writing at an office of the Washington state employment security department on such forms as shall be provided. After an individual shall have first filed an application for initial determination, he shall file a claim for every week thereafter with respect to which he claims benefits. . . . [E]ach individual shall during the calendar week for which . . . benefits are claimed report in person, and in the next succeeding period of two calendar weeks shall make a certification with respect to the week for which . . . benefits are claimed . . .

WAC 192-12-140 (2).

RCW 50.20.010 provides that an unemployed individual shall be eligible for benefits with respect to any week only if he satisfies certain requirements, including the filing of a claim.

After establishing his eligibility, a claimant may subsequently be disqualified under one of five provisions: RCW 50.20.050 · (for voluntarily leaving work without good cause); RCW 50.20.060 (for having been discharged from work for misconduct); RCW 50.20.070 (for misrepresen-

tation in his claim); RCW 50.20.080 (for refusal to work); and RCW 50.20.090 (if his unemployment is due to a labor dispute).

Further, RCW 50.20.180 contemplates that a claim must be filed before benefits can be denied. That section provides:

> If . . . payment of benefits shall be denied to any claimant for any week or weeks, the claimant and such other interested party as the commissioner by regulation prescribes shall be promptly issued written notice of the denial and the reasons therefor.

Thus it is apparent that the legislature contemplated that claims could and would be filed which were not compensable. We must assume that the legislature had this fact in mind when it enacted RCW 50.20.070, providing that the additional period of disqualification for misrepresentation would commence the first week that a claimant filed a claim after notification of the department's determination.

The department would have the court add the words "otherwise compensable" to modify the word "claim" as used in RCW 50.20.070. These words were in fact added by the legislature in 1973 when it enacted the amendment contained in Laws of 1973, 1st Ex. Sess., ch. 158, § 5.

The department suggests that this legislative amendment amounts to a construction of the preexisting provisions. No authority is cited for the proposition that an amendatory act affecting a material change in the language of a statute should be viewed as a legislative interpretation of the act. As stated in 1 J. Sutherland, *Statutory Construction* § 1930, at 159 (Supp. 1972), an amendment of an unambiguous statute indicates a purpose to change the law. This is in harmony with the general rule stated at page 412 of that treatise. There it is said:

> Because it is defined as an act that changes an existing statute, the courts have declared that the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any

material change in the language of the original act is presumed to indicate a change in legal rights.

(Footnotes omitted.) 1 J. Sutherland, *Statutory Construction* § 1930 (3d ed. F. Horack 1943).

We recognized and applied that principle in *In re Bale,* 63 Wn.2d 83, 385 P.2d 545 (1963), a case arising under the Employment Security Act. We cited *Graffel v. Honeysuckle,* 30 Wn.2d 390, 191 P.2d 858 (1948), quoting with emphasis the statement contained therein, that where a material change is made in the wording of a statute, a change in legislative purpose must be presumed. *Home Indem. Co. v. McClellan Motors, Inc.,* 77 Wn.2d 1, 459 P.2d 389 (1969), also applies this principle, although in a different context.

RCW 50.20.070 is unambiguous insofar as it designates the event upon the occurrence of which the period of disqualification begins to run. Therefore, our assumption must be that the legislature intended to change the act when it amended it in 1973.

█ The department maintains that the court should give great weight to the construction which it has placed upon the statute, and the superior court was apparently of the opinion that the department's view of the meaning of the legislation was conclusive. However, the rule that weight will be given to an administrative construction applies only where the act in question is ambiguous. Rules and regulations promulgated by a state agency are entitled to great weight in resolving doubtful meanings of laws but they may not amend or change the enactments of the legislature. *Pringle v. State,* 77 Wn.2d 569, 464 P.2d 425 (1970); *Pierce County v. State,* 66 Wn.2d 728, 404 P.2d 1002 (1965). Assuming then, that the method of determining the period of disqualification adopted in this case is one which the department has consistently utilized over a period of many years (although we have before us no evidence that such is the case), it must be regarded as an attempt to modify the statute rather than an interpretation of it.

█ The department suggests that, unless the act is con-

strued as permitting the imposition of consecutive periods of disqualification, it is rendered meaningless. We cannot subscribe to this view. The imposition of concurrent civil penalties is analogous to the practice of imposing concurrent sentences in criminal cases. As stated in 21 Am. Jur. 2d *Criminal Law* § 547 (1965),

> Generally, in the absence of a statute to the contrary, in imposing sentence on two or more counts or on two or more indictments consolidated for trial, if the court fails to specify otherwise, the term of imprisonment on the second or subsequent judgment runs concurrently with the first.

(Footnotes omitted.) *See also* Annot., *When sentences imposed by same court run concurrently or consecutively; and definiteness of direction with respect thereto,* 70 A.L.R. 1511 (1931).

RCW 9.92.080 provides that whenever a person is convicted of two or more offenses which arise from a single act or omission, the sentences imposed therefor shall run concurrently unless the court in pronouncing sentence expressly orders the service of the said sentences to be consecutive. It further provides that whenever a person is convicted of two or more offenses arising from separate and distinct acts or omissions, the court may expressly order that the sentences run concurrently.

If, as the department contends, the imposition of concurrent or overlapping penalties is a meaningless act, these criminal provisions are also meaningless acts and we think such a contention has never been successfully maintained.

Since the legislation is remedial in nature and, by the legislature's own direction, to be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby (RCW 50.01.010; *In re Bale, supra*), we may asssume that the legislature considered that the penalties provided therein were sufficient, even though there might be situations under which the periods of disqualification would overlap.

In any event, the language of RCW 50.20.070, as it ex-

isted prior to the 1973 amendment, is plain and unambiguous. Consequently, the trial court erred in sustaining the ruling of the Employment Security Department appeal tribunal, as affirmed by the commissioner, that the additional 26-week period of disqualification should commence not with the first week in which the appellant filed a claim after the notice was mailed, but at the conclusion of his disqualification for misconduct discharge.

The judgment is reversed.

HALE, C.J., and FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.