[No. 42856.   En Banc.   June 27, 1974.]

RALPH BITNEY *et al., Appellants,* v. ALLEN B. MORGAN, *Respondent.*

*Robert H. Stevenson,* for appellants.

*Christopher T. Bayley, Prosecuting Attorney,* and *Raymond B. Ferguson, Deputy,* for respondent.

HUNTER, J.—This case involves a direct appeal by the appellants (plaintiffs), Ralph Bitney and other similarly situated landowners in Enumclaw, Washington, from a final order of the Superior Court for King County sustaining the order of the Washington State Board of Tax Appeals, which order affirmed the King County Assessor's revaluation of the appellants' farmland for tax purposes.

The facts, as shown by the record, are as follows. The appellants are taxpayers of the state of Washington who own collectively approximately 4,000 acres of land (essentially used for dairyland purposes) in the Enumclaw bench area. In 1969 the respondent (defendant), Allen B. Morgan as King County Assessor, revalued the true and fair value of the appellants' farmland for tax purposes for the year of 1970, resulting in a substantial increase in the total assessed valuation of the appellants' land from 1969 to 1970. Following the reassessment of the land in question by the respondent, the appellants individually appealed to the King County Board of Equalization. On July 15, 1969, the Board of Equalization issued its ruling which required a horizontal reduction of 11 percent applicable to all properties under appeal. The appellants, however, subsequently filed an appeal to the Washington State Board of Tax Appeals (hereinafter referred to as the Board), and the respondent cross-appealed on the ruling granting an 11 percent reduction. At this time some taxpayers requested a formal hearing pursuant to RCW 82.03.140, while approximately 59 appeals were considered as informal appeals. In any event, all of these appeals before the Board were consolidated for the purpose of being heard in one hearing because each appeal pertained solely to the value of land; no appeals were taken with respect to any improvements thereon.

The hearing before the Board commenced on January 18, 1971, and consumed nearly 8 days of presentation totaling approximately 48½ hours and more than 600 pages of tran-

scribed record. On June 4, 1971, the Board issued its final order whereby it found that the 11 percent reduction by the King County Board of Equalization was improper and sustained the determination by the respondent of the true and fair value of the appellants' land. The Board found that the appellants "introduced no affirmative evidence, by way of sales of comparable properties or other indications of value of a positive nature, which this Board could use as a basis of valuation." The Board concluded that the respondent had properly determined the true and fair value of the appellants' land by examining 500 sales in the area and relying upon 101 such sales to be "comparable" to properties involved in these appeals. The Board noted that the evidence introduced by the appellants relative to the income received from their dairy farms "failed to establish a full true and fair market value of the property measured by or based upon the evidence of income." The evidence submitted by the appellants, according to the Board, "reflected a value very much below current prices being paid for comparable lands in the area." The Board, therefore, concluded that the respondent had substantiated with very extensive evidence the basis for the values established.

The appellants thereafter appealed the final order by the Board to the Superior Court for King County. Because a formal hearing before the Board had been elected pursuant to RCW 82.03.140 (*see* RCW 82.03.180), judicial review of the Board's decision was obtained pursuant to RCW 34.04.130 and RCW 34.04.140, and not heard "de novo." RCW 34.04.130 (6) provides as follows:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or
> (c) made upon unlawful procedure; or
> (d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

Pursuant to this statute, the trial court affirmed the Board's order sustaining the respondent's valuation of the appellants' lands, and held that the administrative findings, inferences, conclusions and decisions were not in violation of any of the above provisions. Pursuant to RCW 34.04.140, *supra*, the appellants filed a direct appeal with this court to review the final judgment of the Superior Court.

▉ The posture of this appeal, in that it is a review of an administrative hearing, is whether or not the Board was in violation of any of the above provisions of RCW 34.04.130(6). Thus the appellants must show from the record and the applicable statutes that the Board was in violation of one or more of these sections of the administrative code in order to prevail on this appeal. With these rules in mind, we turn to a consideration of the issues raised.

The primary contention of the appellants on this appeal is that the county assessor proceeded on a fundamentally wrong basis in determining the value of the appellants' property, in that he appraised the property on the basis of what he determined to be the highest and best use which was other than for dairy farm purposes, and that he failed to follow the approach of farm income in determining the land value. The assessor admittedly determined the highest and best use to be that of development and residential purposes as demonstrated by numerous comparable sales of similar property, exclusive of improvements, in the area.

To put the appellants' contention in proper perspective, we must first look at the constitutional and legislative requirements for assessing and for fixing the value of land for tax purposes. Const. art. 7, § 1, states in part:

The power of taxation shall never be suspended, surrendered or contracted away. *All taxes shall be uniform upon the same class of property within the territorial limits* of the authority levying the tax and shall be levied and collected for public purposes only.

(Italics ours.) Const. art. 7, § 2 (amendment 17), in effect for the tax year in question, provided:

Except as hereinafter provided and notwithstanding any other provision of this Constitution, the aggregate of all tax levies upon real and personal property by the state and all taxing districts now existing or hereafter created, shall not in any year exceed forty mills on the dollar of assessed valuation, *which assessed valuation shall be fifty per centum of the true and fair value of such property in money* . . .

(Italics ours.) Amended Laws of 1971, page 1827, S.J.R. No. 1, Amendment 55. Approved November 1972. (ii) Laws of 1971, page 1834, H.J.R. No. 47, Amendment 59. Approved November 1972.

The legislature, pursuant to these constitutional mandates, has enacted laws, generally found in RCW 84.40, which provide standards and guidelines to the assessor in determining the valuation of land for tax purposes.[1] RCW 84.40.030, effective as of the time of the revaluation in the instant case, provided as follows:

All property shall be assessed fifty percent *of its true and fair value in money.* In determining the true and fair value of real or personal property, the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation; nor shall he adopt as a criterion of value the price for which the said property would sell at auction, or at a forced sale, or in the

---

[1] It should be noted that Const. art. 7, § 11 (amendment 53), which was in effect at the time of the revaluation in this case, provides as follows:

Nothing in this Article VII as amended shall prevent the legislature from providing, subject to such conditions as it may enact, that the true and fair value in money (a) of farms, agricultural lands, standing timber and timberlands, and (b) of other open space lands which are used for recreation or for enjoyment of their scenic or natural beauty shall be based on the use to which such property is currently applied, and such values shall be used in computing the assessed valuation of such property in the same manner as the assessed valuation is computed for all property. [1967 House Joint Resolution No. 1. Approved November 5, 1968.]

No such legislation, however, has been enacted pursuant to this constitutional provision which would control the decision in this case.

aggregate with all the property in the town or district; but he shall value each article or description of property by itself, and at such price as he believes the same to be fairly worth in money at the time such assessment is made. *The true cash value of property shall be that value at which the property would be taken in payment of a just debt from a solvent debtor.*

(Italics ours.) Amended by Laws of 1971, 1st Ex. Sess., ch. 43, § 1, effective April 30, 1971, Laws of 1971, 1st Ex. Sess., ch. 288, § 1, effective May 21, 1971; Laws of 1972, 1st Ex. Sess., ch. 125, § 2; Laws of 1973, 1st Ex. Sess., ch. 187, § 1, Laws of 1973, 1st Ex. Sess., ch. 195, § 96, effective January 1, 1974.

The words "true and fair value in money" have consistently been interpreted by our courts to mean "fair market value." *State ex rel. Morgan v. Kinnear*, 80 Wn.2d 400, 494 P.2d 1362 (1972). In *Mason County Overtaxed, Inc. v. Mason County*, 62 Wn.2d 677, 384 P.2d 352 (1963), we reenunciated the rule in the following express language on pages 683-84:

Market value means the amount of money which a purchaser willing, but not obliged, to buy would pay an owner willing, but not obligated, to sell, *taking into consideration all uses to which the property is adapted and might in reason be applied.*

(Italics ours.) This is consistent with the legislative direction which further appears in WAC 458-12-330, as follows:

All property, unless otherwise provided by statute, shall be valued on the basis of its highest and best use for assessment purposes. Highest and best use is the most profitable, likely use to which a property can be put.

It appears evident from an examination of the foregoing constitutional provisions, the legislative enactments in effect for the tax year in question and our own interpretation thereof by a continuous line of decisions in this state, that it was the duty of the assessor to fix the appraised value of real property for tax purposes on the basis of its fair market value at the time the assessment was made.

*State ex rel. Morgan v. Kinnear, supra.* Appraising real property on the basis of its highest and best use is only a way of determining the amount a purchaser willing, but not obliged to buy, would pay an owner willing, but not obligated to sell, for the property in question. The appellants' contention in this case that the assessor erred in basing the revaluation upon the highest and best use of the appellants' property cannot be sustained.

The appellants' argument that the assessor erred in not utilizing the farm income approach is also without merit as it appears clear from the record that this approach in this case would not reflect the fair market value of the property at the time the assessment was made. In the instant case, the fact that the highest and best use of the property reflected a higher market value than for farm use, justified the assessor in adopting the approach which he did to carry out the mandate of RCW 84.40.030, *supra*, that the property should be appraised on the basis of its true and fair value.

■ It is contended that article 7, section 1, of our state constitution, requiring all property to be assessed uniformly, was violated by following the income approach for determining the value of farms in eastern Washington and refusing to do so in appraising the farms of the appellants in western Washington. This contention is without merit as the record shows that the farm income approach did not accurately reflect the true and fair market value of the appellants' land in the Enumclaw area at the time the assessment was made.

■ It is argued that the sales of the some 101 parcels of property in the area were not comparable sales since, in many instances, the purchases were by land developers for platting and subdividing and land speculation purposes, and that this was a rash of buying precipitated by the extensive expansion in the Boeing aircraft industry at that time. This contention is without merit. As long as these transactions were bona fide sales between a purchaser willing, but not obliged to buy, and an owner willing but not

obligated to sell, and these sales represented the effective market demand for property of similar type to that of the appellants in the geographical area, they would be proper to consider in determining the fair market value of the appellants' property.

It is contended that the appellants' properties are not adaptable to residential development because of poor drainage and the failure of the land to meet the percolation test necessary for the issuance of building permits. There is no evidence in the record to show that at the time of the 101 sales of the properties considered as comparable, that percolation tests were necessary for obtaining building permits. It must be emphasized that the true and fair value of property shall be determined by an assessor on the basis of its fair market value for the year the assessment is made. If economic conditions or restrictions for building on comparable property change, which reflect a change in the value of such property, these are matters that the assessor must consider in making his annual assessments.

On the basis of the manner in which an assessor must determine valuations of real property, as we have heretofore stated, together with the evidence in this record, we cannot say that the Board violated any of the provisions of RCW 34.04.130 (6) in making its findings and conclusions.

The judgment of the trial court in sustaining the order by the Washington State Board of Tax Appeals is affirmed.

It is so ordered.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.