[No. 44056.   En Banc.   December 8, 1977.]

BURLINGTON NORTHERN, INC., ET AL, *Respondents,* v. KEN JOHNSTON, ET AL, *Appellants.*

322

*Christopher T. Bayley, Prosecuting Attorney, Norman K. Maleng, Chief Civil Deputy,* and *William C. Severson, Deputy,* for appellant King County.

*Donald Herron, Prosecuting Attorney,* and *Terrence F. McCarthy, Deputy,* for appellant Pierce County.

*Robert E. Schillberg, Prosecuting Attorney,* and *Elmer E. Johnston, Jr.,* for appellant Snohomish County.

*John C. Merkel, Prosecuting Attorney,* and *W. Daniel Phillips, Deputy,* for appellant Kitsap County.

*Patrick McMullen, Prosecuting Attorney,* and *William H. Nielsen, Deputy,* for appellant Skagit County.

*Craig Ritchie, Prosecuting Attorney,* for appellant Clallam County.

*David Thiele, Prosecuting Attorney,* for appellant Island County.

*H. N. Woolson, Prosecuting Attorney,* for appellant Columbia County.

*Woodrow L. Taylor,* for respondent Burlington Northern, Inc.

*Cummings, Durkan & McCabe* and *James B. McCabe,* for respondent Cascade Natural Gas Corporation.

*Lane, Powell, Moss & Miller* and *G. Keith Grim,* for respondent Burlington Northern, Inc., et al.

*Slade Gorton, Attorney General,* and *Matthew J. Coyle, Assistant,* for respondent State.

ROSELLINI, J.—Before the Board of Tax Appeals, eight county assessors challenged the Department of Revenue's 1972 equalization of real and personal properties of utilities and private car companies (hereinafter called the companies). They contended that the method used was unconstitutional and that it was not authorized by RCW 84.12.350 and RCW 84.16.110, which provide for equalization of such

properties. Under that method, instead of equalizing company real property at the same level as locally assessed real property and company personal property at the same level as locally assessed personal property, the department used what it termed an "indicated ratio." This percentage figure was computed by dividing the total assessed value of the two kinds of property by their total indicated market value.

It appears that in a period of inflation such as we have been experiencing in recent years, the 4–year cycle of revaluation of real property provided for in RCW 84.41.030 and approved by this court in *Snohomish County Bd. of Equalization v. Department of Revenue,* 80 Wn.2d 262, 493 P.2d 1012 (1972), results in a declining ratio of assessed to true value with respect to each property during the interim between valuations. Personal property, which is valued every year, maintains a consistent ratio of 50 percent of true and fair value; but the ratio of assessed value to true value, with respect to any one piece of real property, falls below that ratio after the valuation has been made. Consequently, the average ratio of assessed value of real property is less than 50 percent of true value. Because there is more taxable value in real property, generally, than in personal property, the declining real property ratio causes the composite ratio of real and personal property to fall below 50 percent and closer to the real property ratio than to the personal property ratio.

Company operating property is predominantly personal property. If all of the property which is classified as personal property under the statute is equalized as such, the equalization will be at a higher ratio than the composite ratio adopted by the department. Use of the indicated ratio means that the companies' tax liabilities are less than they would be if the real and personal properties were equalized separately. Consequently it results in a loss of revenues to the counties.

The board held that the method used violated Const. art. 7, §§ 1 and 2.[1] In its opinion, it found that the method was

---

[1]Const. art. 7, § 1 (amendment 14), requires that all taxes shall be uniform upon the same class of property within the territorial limits of the levying

not authorized by statute. However, it did not base its decision on that finding.

The board ordered that the department certify all of the operating property to the counties at 50 percent of its true and fair value, and that the property be assessed at that value. Realizing that the case would probably be appealed to the Superior Court and anticipating a possible reversal on this holding, the board adopted as its alternative decision the dissenting opinion of its chairman, who concluded that the department should equalize the values of real and personal property separately, according to the average ratio at which such property was valued locally.

The Department of Revenue and intervening utilities petitioned the Superior Court for Thurston County for review of this decision.[2] After reviewing the record, that court reversed the Board of Tax Appeals. It held that the use of the indicated ratio did not violate constitutional provisions and that it was authorized by statute, giving conclusive weight to the fact that the legislature had not seen fit to amend the provision relied upon as authority,

authority. At the time of the equalization and the assessment of these properties, Const. art. 7, § 2 (amendment 17), required that property be assessed at 50 percent of its true and fair value. Const. art. 7, § 2 has been amended three times since 1972. 1971, S.J.R. 1, approved 11/7/72 (amendment 55); 1971, H.J.R. 47, approved 11/7/72 (amendment 59); and 1975–76 (2d Ex. Sess.), S.J.R. 137, approved 11/2/76 (amendment 64).

[2]It is agreed that the use of the department's indicated ratio resulted in a loss of tax revenues to the counties. The board's holding portended no loss of revenue to the state. It would appear debatable, therefore, whether the Department of Revenue is a "person aggrieved" within the meaning of RCW 34.04.130(1), the statute under which the right to petition for review was claimed, or that its substantial rights could be shown to have been prejudiced. Proof of such prejudice is required under RCW 34.04.130(6) before a reversal can be ordered. See Bitney v. Morgan, 84 Wn.2d 9, 523 P.2d 929 (1974). RCW 82.03.180, providing for judicial review of decisions of the Board of Tax Appeals, allows the Director of Revenue to appeal only from decisions made pursuant to RCW 82.03.130(1). We need not decide whether the department had standing to seek judicial relief in this action, however, since utilities and car companies, whose tax liability is involved, have intervened.

after the method of equalization was adopted in 1963. The county assessors have appealed from that decision.

■ The first question before us is one of statutory interpretation. It is settled that an administrative agency has only those powers which are expressly granted to it by statute, or necessarily implied in the grant. *Ortblad v. State,* 85 Wn.2d 109, 530 P.2d 635 (1975). While such an agency has some discretion in interpreting ambiguous statutes, it may not alter or amend an act, and its interpretation must be within the framework and policy of the statute. *Allen v. Employment Security Dep't,* 83 Wn.2d 145, 516 P.2d 1032 (1973); *see Smith v. Greene,* 86 Wn.2d 363, 545 P.2d 550 (1976).

■ In interpreting a statute, it is the duty of the court to ascertain and give effect to the intent and purpose of the legislature, as expressed in the act. The act must be construed as a whole, and effect should be given to all the language used. Also, all of the provisions of the act must be considered in their relation to each other and, if possible, harmonized to insure proper construction of each provision. *Publishers Forest Prods. Co. v. State,* 81 Wn.2d 814, 505 P.2d 453 (1973).

The equalizing of company property is one of a series of duties enjoined upon the Department of Revenue under RCW 84.12 and RCW 84.16, with respect to the valuation of such properties and the apportioning of the value of the operating property of any such company to the state and to the counties within which it operates. Those duties include: (1) determining the true cash value of the operating property of each company operating in Washington (RCW 84.12.270 and RCW 84.16.040); (2) apportioning to Washington that part of the value of each interstate company which represents the value of its property in Washington (RCW 84.12.300 and RCW 84.16.050); (3) apportioning the value of the operating property of each company equitably to the counties in which it operates (RCW 84.12.350 and .360, and RCW 84.16.110 and .120); (4) determining the equalized value of the property apportioned to each county

(RCW 84.12.350 and RCW 84.16.110); and (5) certifying the equalized value to the local assessors for placement on the tax rolls (RCW 84.12.370 and RCW 84.16.130). It is the fourth duty, that of equalization, with which we are concerned here.

For purposes of assessment of the operating properties of public utilities, and the apportionment and taxation thereof, the legislature has expressly classified such properties as either personal or real in RCW 84.12.280. For example, all railroad equipment which is stationary is classified as real property, while all movable property is classified as personal property. All of the operating property other than lands or buildings of electric light and power companies, telephone companies, gas companies, and heating companies is to be "assessed and taxed" as personal property. Under RCW 84.16.010 all of the operating property of a private car company is deemed to be personal property.

Factors which the department may take into consideration in valuing the operating property of a company are set forth in RCW 84.12.300 and RCW 84.16.040 and .050, and the department is authorized to take into consideration the value of the property as a unit.

The controversy before us focuses upon the term "general property", as used in RCW 84.12.350 and RCW 84.16-.110.

> Upon determination by the department of revenue of the true and correct actual cash value of the property appearing on such rolls it shall apportion such value to the respective counties entitled thereto, as hereinafter provided, and shall determine the equalized assessed valuation of such property in each such county and in the several taxing districts therein, by applying to such actual apportioned value the same ratio as the ratio of assessed to actual value of the general property in such county: *Provided,* That, whenever the amount of the true and correct value of the operating property of any company otherwise apportionable to any county or other taxing district shall be less than two hundred fifty dollars, such amount need not be apportioned to such county or

taxing district but may be added to the amount apportioned to an adjacent county or taxing district.

RCW 84.12.350.

Upon determination by the department of revenue of the true and correct actual cash value of the property appearing on such rolls the department shall apportion such value to the respective counties entitled thereto as hereinafter provided, and shall determine the equalized or assessed valuation of such property in such counties by applying to such actual apportioned value the same ratio as the ratio of assessed to actual value of the general property of the respective counties: *Provided,* That, whenever the amount of the true and correct value of the operating property of any company otherwise apportionable to any county shall be less than two hundred fifty dollars, such amount need not be apportioned to such county but may be added to the amount apportioned to an adjacent county.

RCW 84.16.110. It will be seen that these two provisions are substantially identical and that the general purpose and scheme of the two statutes are the same.

To summarize their pertinent provisions, RCW 84.12 and RCW 84.16 impose upon the state, rather than upon the counties, the duty of determining the value of the operating properties of companies covered by their provisions and apportioning that value among the counties. They declare that for purposes of assessment and apportionment, some operating properties of the companies shall be classified as personal and others as real property. While they authorize the department to consider the operating property as a unit in arriving at its value, they expressly require that the property be apportioned to the counties as real or personal property and that it be assessed as such.

After the apportionment, the statutes require the department to determine the equalized assessed valuation of such property in each such county and in the several taxing districts therein, using the ratio of assessed value to actual value of the "general property" in such county. In each of the two chapters, this is the first time that the term

"general property" is used. It is not defined in the "definitions" sections of the statutes. It does, however, with respect to public utilities, reappear in RCW 84.12.370, which provides:

When the state board of equalization shall have determined the equalized assessed value of the operating property of each company in each of the respective counties and in the taxing districts thereof, as hereinabove provided, the department of revenue shall certify such equalized assessed value to the county assessor of the proper county. The county assessor shall enter the company's real operating property upon the real property tax rolls and the company's personal operating property upon the personal property tax rolls of his county, together with the values so apportioned, and the same shall be and constitute the assessed valuation of the operating property of the company in such county and the taxing districts therein for that year, *upon which taxes shall be levied and collected in the same manner as on the general property of such county.*

(Italics ours.) Again we find it in RCW 84.12.380 which reads:

All property of any company not assessed as operating property under the provisions of this chapter shall be assessed by the assessor of the county wherein the same may be located or situate the same as the general property of the county.

RCW 84.16.130 and RCW 84.16.140 contain essentially the same provisions, with respect to private car companies. RCW 84.16.130 expressly directs the county assessor to enter the assessment upon the personal property tax rolls, there to be taxed the same as "general property" of the county.

It would seem evident that the legislature was much concerned with the classification of operating property as either real or personal in these statutes, although it recognized the practicality and desirability of determining the value of the property as a unit, before segregating it as real and personal property for tax purposes. The legislature's possible motivation in prescribing these classifications is

not explained in any of these briefs. We must assume that it had in mind the constitutional requirement of uniformity and that the classification was directed toward this end.

The constitutionality of these classifications is not challenged. Moreover, the respondents concede, and in fact rely upon the legislature's right to classify property for purposes of taxation. We have acknowledged the right in *State ex rel. Atwood v. Wooster*, 163 Wash. 659, 2 P.2d 653 (1931); *Puget Sound Power & Light Co. v. Seattle*, 117 Wash. 351, 201 P. 449 (1921).

It is the respondent's theory that in this instance the legislature created a class of property which is neither real nor personal, for the purposes of valuation and equalization; although they are forced to admit that for purposes of taxation (the main object of the statute), property must be placed upon the tax rolls as either personal or real property. The intent to create such a class, it is suggested, can be found in the provision requiring that company property be equalized with the "general property" of the county. As they read the statute, it conveys a legislative intent that all of the property of the companies shall be treated as one class called "general," and equalized with all of the property of a given county, which is likewise treated as one class called "general."

It is obvious that such an intent is not expressly stated in the statute. If it can be found there at all, it must be derived by implication from the word "general" as it is used in describing the property with which company property is to be equalized.

The term "general property" is not one commonly used to describe a class of property. Black's Law Dictionary 1382 (4th ed. 1968) gives only this definition: "The right and property in a thing enjoyed by the *general owner*." Obviously, that definition has no relevance in this context.

█ The parties have drawn our attention to no court decision in which the meaning of the term has been explored. The respondents do, however, point out that it has been used by the Washington Legislature in previous

statutes, and that in one of them, Laws of 1925, 1st Ex. Sess., ch. 130, § 36(7), p. 246, the following provision can be found:

> 7. The term "general property of the state" shall be deemed to include all real and personal property appearing upon the assessment rolls and tax rolls throughout the state, upon which the state, county and local taxes are levied and collected, with such changes and corrections made by the tax commission as hereinafter provided.

The quoted provision does not reveal a legislative intent to reclassify real and personal property, combining them into one homogeneous class. Rather it suggests that the legislature intended to employ a shorthand expression, to avoid the necessity of repeating the words "real and personal" and the modifying words which follow them in the quoted section.

All of the parties to this action are agreed that the term "general property," as used in this context, means "real and personal property." The dispute centers upon the question whether the legislature intended that real and personal property should be lumped together and their ratios of assessed to actual value averaged to compute the equalizing factor, or whether it intended that personal operating property should be equalized at the ratio of assessment to actual value in the counties, and real operating property should be equalized at the ratio of assessment to actual value in the counties.

Reading the statute in its entirety, giving effect to all of the provisions and seeking to harmonize them, we cannot find expressed therein any intent that the classifications established in RCW 84.12.280 and RCW 84.16.010 should be abandoned for purposes of equalization. Such an interpretation would require us to disregard entirely the legislative declaration that in the case of utilities, the classification is made for the purposes of making the assessment, and apportioning the values and the taxation thereof.

(RCW 84.12.280.) Also, in the case of private car companies, it is declared that for the purposes of that chapter, all of the operating properties "shall be deemed personal property." RCW 84.16.010. The purposes of that chapter include equalization. Under RCW 84.12.350 and RCW 84.16.110, apportionment is done before equalization is undertaken. By the legislative directive, the property has already been classified as personal or real before the department turns to the question of equalization.

The department gives as its reason for treating the real and personal operating property of a company as a homogeneous whole for purposes of equalization its belief that the legislative classification of certain property as personal rather than real, results in a lack of uniformity of tax burden. Although this argument was made before the Board of Tax Appeals, that body did not find that it was established by the evidence. We are not shown that the record supports the respondents' contention. The chairman's partial dissent, adopted by the majority as its alternate decision, expressly states its author's belief that the separate equalization of real and personal property results in greater equity and uniformity than the other methods or procedures presented before the board. The Superior Court did not find that such an equalization procedure would be inequitable.

It would appear that the department disagrees with the legislative judgment upon this subject. It is nevertheless bound to carry out the legislative directive. As we have observed earlier, the validity of the legislative classification of company operating property is not challenged in this action.

Our understanding of the legislative intent with respect to the use of the term "general property" in the equalization provisions of the two statutes accords with the obvious meaning of the term as it is used in RCW 84.12.370 and .380, and RCW 84.16.130 and .140. In each of these contexts, the county assessor is told to enter the property on the tax rolls as real or personal. Each provides that taxes

shall be levied and collected the same as on the general property of the county. The respondents do not suggest that the term "general property," as used in these provisions, means anything but that real property shall be taxed as real property and personal property shall be taxed as personal property.

We are told that because the legislature has not, by statutory amendment, rejected the department's interpretation, it has impliedly approved that interpretation. The apportionment and equalization provisions of RCW 84.12.350 and RCW 84.16.110 appeared in the statutes as early as 1933, in chapter 146, section 11 in substantially the same language. The "indicated ratio" was first used in 1963. Thus it appears that for 30 years, the department understood the provisions the same as we now read them. If the length of time during which the legislature has remained inert is a determinative factor, there is more reason to assume that the legislature approved the original interpretation than to assume that it has approved the later one, a period of 30 years having elapsed under the prior interpretation and only 10 under the one now contended for, at the time this action was brought. In any event, an administrative agency cannot alter or amend a statute by interpretation, even with legislative acquiescence, and the court must give effect to the plain meaning of the language used.

The Board of Tax Appeals correctly found that the legislature, in enacting these two statutes, did not intend to create a new class of property for purposes of equalization,[3] but rather intended that company operating property should be classified for all purposes of taxation, other than valuation, as real or personal, as prescribed in the statutes. This determination was sufficient to support its holding that company operating property should be equalized according to its classification in the statutes.

[3]We note that the department has been given the authority to classify property for equalization purposes in RCW 84.48.080. The concisely expressed intent found in this statute stands in sharp contrast to the vague term upon which the department supports its authority in this action.

We do not agree, however, with the board's further conclusion that company operating properties should be assessed at 50 percent of their true and fair value, without regard to the value at which other county property is assessed. It was the clearly expressed legislative intent that the properties should be equalized at the local ratios, even though the department values them every year at their true and fair value.

The legislative purpose was obviously to achieve as much uniformity as possible in the distribution of the tax burden. We have recently recognized that the constitutional requirement of uniformity, Const. art. 7, § 1 (amendment 14), is more insistent than the requirement that property be valued at 50 percent of its true and fair value, Const. art. 7, § 2 (amendment 17); and legislation directed toward the achievement of this end should be given effect. *Snohomish County Bd. of Equalization v. Department of Revenue*, 80 Wn.2d 262, 493 P.2d 1012 (1972). We approve, therefore, the minority opinion of the chairman of the board, which was the board's alternate decision.

Inasmuch as we have found that the statute does not authorize the method of equalization employed by the department, it becomes unnecessary to consider whether the method used is unconstitutional, as contended by the appellants.

The judgment of the Superior Court is reversed, and the alternate decision of the Board of Tax Appeals is reinstated. The Department of Revenue must equalize the assessed values of company operating property as real or personal property according to the classifications provided in the statutes.

WRIGHT, C.J., and HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.

DOLLIVER, J. (dissenting)—The majority has based its decision solely upon an interpretation of RCW 84.12.350 and RCW 84.16.130. The Department of Revenue has

interpreted these provisions to allow the use of a combined indicated ratio. Contrary to the majority, I not only believe the interpretation of the department is accurate but I also believe the rules of construction previously adopted by this court lead to the conclusion that the position of the department is correct.

The history of RCW 84.12.350 demonstrates that the term "general property" was intended to include both real and personal property. RCW 84.12.350 was derived from the Laws of 1935, ch. 123, § 14, p. 367, which provided:

> The assessment rolls of companies assessed under the provisions of this act shall be reviewed, examined and corrected by the state board of equalization at its annual meeting held in September for the purpose of equalizing the assessed valuation of the taxable property of the state and said state board of equalization may correct the valuation in such manner as may in its judgment make the valuation thereof just and relatively equal with the valuation of the general property of the state.

That section in turn was taken almost in whole from Laws of 1925, 1st Ex. Sess., ch. 130, § 46, p. 256, which provided in relevant part:

> The assessment rolls of railroad and telegraph companies shall, by the commission, be submitted to the state board of equalization at its annual meeting held for the purpose of equalizing the assessed valuation of the taxable property of the state; and any railroad or telegraph company interested shall have the right to appear and be heard as to the assessment of the property of such company, and as to the value and assessment of the general property of the state, and the said board of equalization may, on application or of its own motion, correct the valuation or assessment of the property of such company, in such manner as may in its judgment make the valuation thereof just and relatively equal with the valuation of the general property of the state.

The phrase "general property" of the state was defined in section 36(7) of the 1925 statute at page 246, as:

> The term "general property of the state" shall be deemed to include all real and personal property appearing upon the assessment rolls and tax rolls throughout the state, upon which the state, county and local taxes are levied and collected, with such changes and corrections made by the tax commission as hereinafter provided.

The majority argues the purpose of defining "general property" was "to employ a shorthand expression" to avoid repeating certain words and phrases. While this notion understandably possesses a certain charm for the majority, I am not persuaded of its validity.

Although section 36 and many other sections of the 1925 act were repealed by the 1935 act, use of the original legislative definition is appropriate, particularly since the section of the original statute which contains the defined term was reenacted without significant change. *See State v. Herr,* 151 Wash. 623, 628, 276 P. 870 (1929).

In *Great Northern Ry. v. Cohn,* 3 Wn.2d 672, 687, 101 P.2d 985 (1940), we stated:

> In the construction of statutes which reenact with certain changes, or repeal, former statutes, or which contain revisions or codifications of earlier laws, resort may be had to repealed and superseded statutes *in pari materia.*

*See also* 2A C. Sands, *Statutes and Statutory Construction* § 51.04 (4th ed. 1973).

In any event, the property tax laws have been subject to continuing interpretation by this court during the past 10 years. *See Sator v. State,* 89 Wn.2d 338, 572 P.2d 1094 (1977). During that same period, the same statutes have gone through a substantial reformation by the legislature. The majority points out the Department of Revenue has used the combined ratio only since 1963 while the statute has been in effect since 1933. Thus, by a ratio of 3–to–1, the former interpretation must have been correct. Although this is acceptable arithmetic, I do not believe it is good law. The record does not disclose the reasons for adopting the combined ratio in 1963. It just as reasonably could be argued the pre–1963 interpretation of the statute was in

error and that only in 1963 did the department finally interpret the statute to accord with legislative intent.

At no time since 1963, however, has the legislature seen fit to alter the language in question in RCW 84.16.110 or RCW 84.12.350. The Department of Revenue has used the combined indicated ratio for approximately 14 years. In interpreting these statutes, the decisions of the administrative agency should be afforded considerable weight. *Smith v. Northern Pac. Ry.*, 7 Wn.2d 652, 110 P.2d 851 (1941). Indeed, it may be said the legislature has acquiesced in the department's interpretation of these statutes. As we stated in *State ex rel. Pirak v. Schoettler*, 45 Wn.2d 367, 372, 274 P.2d 852 (1954):

> This [acquiescence by the legislature] is particularly true when, as here, the section is subsequently (1) considered by the legislature, (2) amended in some other particular, and (3) the administrative construction of the section is not repudiated.

This is precisely what occurred here. *Compare* Laws of 1961, ch. 15, § 84.12.350, p. 1118, *with* Laws of 1967, 1st Ex. Sess., ch. 26, § 17, p. 1525, *and* Laws of 1961, ch. 15, § 84.16.110, p. 1125, *with* Laws of 1967, 1st Ex. Sess., ch. 26, § 18, p. 1525.

While the statutes may require interpretation, the rules of construction and the circumstances to which they should be applied are clear. The judgment of the trial court should be affirmed.

UTTER, J., concurs with DOLLIVER, J.